## STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.

### V.

## DANNY RAY RICE, ET AL.

Record No. 890859

April 20, 1990

Present: All the Justices

*Bevin R. Alexander, Jr. (Eleanor Putnam Dunn; Edmunds & Williams*, on brief), for appellant.

*Thomas L. Phillips, Jr. (Thomas L. Phillips; Phillips, Phillips & Phillips*, on brief), for appellee Danny Ray Rice.

No brief or argument for appellee Roy Franklin Vest.

JUSTICE HASSELL delivered the opinion of the Court.

State Farm Mutual Automobile Insurance Company (State Farm) filed this suit for declaratory judgment against Danny Rice (Rice) and Roy Vest (Vest) and requested a determination whether it had an obligation to provide liability coverage pursuant to the terms of a policy of automobile liability insurance. The sole issue that we consider in this appeal is whether an injury caused by an accidental discharge of a rifle arose out of the use of a motor vehicle insured by State Farm.

The relevant facts are not in dispute. On November 21, 1987, Vest and Rice embarked upon a hunting expedition in Amherst County. The men rode in a 1977 Jeep driven by Vest. They arrived at their hunting destination shortly before dawn. They sat in the Jeep and waited until it was light enough to move safely through the woods.

Vest got out of the Jeep. He reached into the back seat of the Jeep and removed a rifle which was stored inside a case. While standing outside the Jeep, he unzipped the case, removed the rifle and some bullets, and placed the case back in the Jeep. Vest loaded his rifle and may have placed the trigger in a half-cocked position.

Rice got out of the Jeep about the same time as Vest. He removed his rifle from the Jeep. The two men intended to go to separate ridges to hunt. While both men were outside the Jeep, Rice told Vest that he was going to leave. Vest opened a thermos bottle and drank some coffee. Next, he opened the Jeep's front door. He placed his loaded rifle on the driver's seat, screwed the cap on the thermos bottle, and put the bottle in the Jeep. As he

picked up the rifle, it discharged. The bullet went through the passenger door and struck Rice as he was walking toward the ridge.

Diane Vest, Roy Vest's wife, owned the Jeep. State Farm had issued a policy of automobile liability insurance to her which was in effect when the accident occurred. Pursuant to the terms of the policy of insurance, Vest, a permissive user of the Jeep, is entitled to coverage if the accident arose out of the use of the Jeep.

The chancellor considered depositions by agreement of counsel, stipulations of fact, memoranda of law, and argument of counsel, and concluded that the accident arose out of the use of the Jeep. State Farm argues that the chancellor erred because: his interpretation of "use" is not a reasonable view of State Farm's intention when it issued the policy of insurance; Vest shot Rice in a classic hunting accident after every significant step had been taken to begin the hunt; and the facts do not establish a causal connection between the activities of Rice, the conduct of Vest and the use of the Jeep as a vehicle when measured at the moment of the accident.

The issue whether the accident arose out of the use of the Jeep is determined by principles which we established in *State Farm Mutual* v. *Powell*, 227 Va. 492, 318 S.E.2d 393 (1984). In *Powell*, we considered whether a death resulting from an accidental discharge of a shotgun resting in a gun rack affixed to a pickup truck arose out of the "use" of a vehicle. David Good had driven his pickup truck to a park. He was accompanied by a female companion. The couple met three friends, including Keith Powell, at the park. Good parked his pickup truck near a truck occupied by Powell. Good turned the motor off but left the key in the ignition switch. Powell got out of his truck and walked to the driver's side of Good's truck. After a few minutes, Powell walked to the other side of Good's truck and stood beside an open door. A loaded 12-gauge shotgun, which was resting in a gun rack which Good had installed in his truck, discharged and fatally injured Powell. The cause of the accidental discharge was unknown. No one had touched the shotgun, nor was there any unusual movement by the persons inside the truck when the discharge occurred. *Id*. at 495-96, 318 S.E.2d at 394.

We established the following principles in *Powell* which are dispositive of this appeal:

[C]onsideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded. In addition, the 'ownership, maintenance, or use' provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their natural and ordinary meaning. Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle. Furthermore, consideration must be given to what the insured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its 'use.' *Id.* at 500-501, 318 S.E.2d at 397 (citations omitted).

We applied these principles to the specific facts in *Powell* and concluded that Powell's death did not arise out of the use of the insured vehicle. In *Powell*, the insured truck was merely the situs of a social gathering. The truck was not being used "for any specific enterprise usually associated with use of a passenger, farm utility vehicle." *Id.* at 501, 318 S.E.2d at 398. The requisite causal relationship between the accident and the employment of the truck as a vehicle for imposition of coverage on the automobile carrier did not exist. Powell was not a passenger in the insured vehicle; nor did he intend to become a passenger. The victim in *Powell* had only a remote connection with the truck as one of a group of persons who had gathered near the truck to socialize. *Id.*

We will affirm the chancellor's decision because application of the *Powell* principles to this case demonstrates that the accident arose out of the use of the Jeep. The specific enterprise associated with the use of the Jeep was to transport Vest, Rice, their rifles, ammunition, and other hunting equipment to the location where they intended to embark upon their hunting expedition. At the time of the accident, Vest was in the process of placing a thermos in the Jeep and was removing his loaded rifle from the Jeep. These items which were used for the hunt were transported in the Jeep. The door on the driver's side of the Jeep was still open at the time of the accidental discharge. Even though Rice had completely alighted from the Jeep and was walking toward a ridge

where he intended to begin his hunt, a sufficient nexus existed between Rice, who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site. Vest had not completed his use of the Jeep when the rifle discharged.

■ We conclude that the requisite causal relationship between the accident and employment of the Jeep as a vehicle for imposition of coverage on the automobile carrier exists. Therefore, the judgment of the trial court will be

*Affirmed.*