## CIRCUIT COURT OF ALBEMARLE COUNTY

United States Fidelity
and Guaranty Co.

v.

Terry W. Hawkins,
Adm'r, et al.

May 8, 1992

Case No. 7896-C

BY JUDGE JAY T. SWETT

This is a declaratory judgment action brought by United States Fidelity and Guaranty Company (hereafter USF&G) requesting a determination as to whether it is obligated to provide coverage to one Carl W. Williams who died as a result of injuries received in an automobile accident on October 13, 1989. Named as defendants are Terry W. Hawkins, Administrator of the estate of Carl W. Williams, Brenda C. Hicks, who was operating the vehicle in which Williams was a passenger, and George R. Parrish, II, Mary Ann Parrish, Jennifer Hawkins and David Hawkins who were in another vehicle involved in the accident. Nationwide Mutual Insurance Co. which insured the Parrish vehicle and might provide uninsured motorist coverage in claims arising out of this accident was also named as a party.

The accident giving rise to this action occurred on October 13, 1989. Hicks was operating her vehicle in a southerly direction on Route 20. The decedent, Williams, was a passenger. Hicks's vehicle crossed the center line of Route 20 and collided with the vehicle occupied by Mr. and Mrs. Parrish and Mr. and Mrs. Hawkins. One or

more occupants of the Parrish vehicle have filed suit against Hicks and Williams' estate for personal injuries suffered as a result of the accident. Hicks has filed an action against Williams for injuries she received in the accident. The reason that Williams' estate has been named as a defendant in the personal injury actions is that Hicks has testified that as she was operating her vehicle, Williams suddenly grabbed and pulled the steering wheel causing her to lose control and collide with the Parrish vehicle.

The issue in this declaratory judgment action involves one of coverage. USF&G insured the Hicks vehicle under a policy with Hicks as the named insured. At the time of the accident, Williams was living with Hicks and therefore was an insured under the USF&G policy. The first coverage question presented by USF&G is whether Williams' conduct at the time of this accident constitutes a "use" of the insured vehicle obligating USF&G to provide a defense to and possibly be liable for any judgment rendered against Williams' estate. The second coverage question presented by USF&G, assuming that Williams was using the vehicle at the time of the accident, is did his conduct fall within the policy exclusion that relates to intentionally caused bodily injuries.

In a letter opinion dated December 6, 1991, this Court ruled that Virginia's "dead man" statute applies to this declaratory judgment action.[1] Evidence was presented on February 14, 1992. Following the hearing, the parties submitted briefs on the issue of the "dead man" statute and the two coverage questions.

### Facts

Brenda Hicks, USF&G's named insured, testified as follows. She and Williams had been living together for about five years. She described the relationship as somewhat abusive and that Williams was a heavy drinker. At the time of this accident, he did not have an operator's license. On October 13, 1989, she received a call from Williams to pick him up at the house of one of his friends. When she arrived at about 7:00 p.m., he was angry and intoxicated.

After making a couple of stops to pick up some of his painting equipment, they headed south on Route 20 toward their home. He continued to be angry and verbally abusive to Hicks. After a stop at a

---

[1] This issue was decided by Judge Paul M. Peatross, Jr.

friend's home, Hicks headed north on Route 20 toward her mother's house because she did not want to go home with Williams for fear of what he might do to her. While travelling north on Route 20, Williams grabbed the manual gear shift lever and began to "slam" the gear shift through the gears. Afraid of what Williams might do, she pulled into a country store owned and operated by Mr. and Mrs. Thomas. She testified that she got out to use the telephone to call the police. When she went into the store, she was told that she could not use the phone. She went outside and saw a friend of Williams, Glen Payne, and asked him to take Williams home. Payne declined. While at the store, Hicks testified that Williams tried to buy more beer and, while in the parking lot, threw beer at the interior windshield of Hicks's car. Hicks testified that she was afraid but, nevertheless, got back into her car with Williams and headed south on Route 20 intending to go to their home.

Hicks testified that within a mile of the store, Williams suddenly pulled the steering wheel down causing the car to veer to the right. She tried to regain control of the car but could not. The last thing she recalls is oncoming headlights. The Hicks vehicle crossed the center line and struck the Hawkins vehicle.

Other evidence presented at the February 14th hearing included the following. An Albemarle County police officer responded to a call about the accident and found the two vehicles on the east side of Route 20. He testified that he was able to establish that Hicks was driving the southbound vehicle and that George Parrish was driving the northbound vehicle. He confirmed that Williams was a passenger in the Hicks vehicle sitting in the right front seat. Williams was dead at the scene. The officer testified about tire marks found on the road, including a "yaw" mark which began in the southbound lane and ended ten feet south of the Hicks vehicle. He testified that a yaw mark is made when a tire is rotating and sliding at the same time.

James and Sandra Thomas, owners of the Thomas Grocery Store on Route 20, testified that "a lady" came into the store around 8:00 p.m. visibly upset. She asked to use the telephone and was told to use the phone outside. They testified that a man then opened the door and asked the woman to come outside. Mr. Thomas told them he did not want any trouble and to get out.

Another Albemarle County police officer testified that she was also at the accident scene. She spoke with David Hawkins, a pas-

senger in the Parrish vehicle, who said that the oncoming car swerved three times and then came into their lane. She also interviewed Hicks at the hospital emergency room. When asked how the accident occurred, Hicks said, "I think Williams grabbed the wheel."

Three other persons who were at the Thomas grocery store testified. Diane Lamb said she saw a couple arguing in the store parking lot on the night of the accident and identified Hicks as the woman involved in the argument. She saw them leave and head south on Route 20. Angie Breeden, who was with Lamb, also saw the couple arguing at the store. Lamb and Breeden came upon the accident scene shortly thereafter. A Virginia game warden testified that he also saw Hicks and Williams at the Thomas grocery store and both appeared to be upset.

### Virginia "Dead Man" Statute

A preliminary issue that must be resolved is whether the evidence is sufficient to satisfy the corroboration requirement of § 8.01–397. More specifically, the defendants argue that to render a decree in favor of USF&G would require this court to rely on the uncorroborated testimony of Brenda Hicks. To do so, argue the defendants, would violate the Virginia Dead Man's Statute.[2] The defendants phrase the issue in terms of whether there was sufficient evidence to corroborate Hicks's testimony that Williams' conduct was "the sole proximate cause of the accident." This Court disagrees that this properly states the issue. Rather, the issue is whether, under § 8.01–397, there is sufficient corroborative evidence for this Court to render a decision in favor of USF&G on the two coverage questions presented. Whether there is sufficient corroborative evidence to establish that Williams was negligent or that Hicks was not negligent is not the issue before this Court.

---

[2] As indicated, the parties appear to agree and the Court has previously ruled that § 8.01–397 applies in this declaratory judgment action.

The Virginia Dead Man's Statute has never before been applied in this type of case.[3] The statute normally arises in an action where there are two parties, one living and one dead, and the surviving party's testimony is the only basis for a judgment in favor of or against the estate of the decedent party. The statute requires that in such a case, the survivor's testimony be corroborated in some way before the surviving party can prevail. Where the statute has been applied in automobile negligence cases, the issue was the same, i.e., was there evidence to corroborate the surviving plaintiff's testimony to justify a judgment in favor of or against the decedent's estate? *Whitmer v. Marcum*, 214 Va. 64 (1973); *Penn v. Manns*, 221 Va. 88 (1980); *Hereford v. Paytes*, 226 Va. 604 (1984).

As stated in *Brooks v. Worthington*, 206 Va. 353, 357 (1965), there is no "hard and fast rule" in applying the Dead Man's statute, and "each case must be decided upon its own facts and circumstances." The amount of corroborated evidence need not be enough that would itself support a verdict. It is evidence that "tends to confirm and strengthen the testimony of the witness sought to be corroborated . . . ." *Id*. It must be more than a "scintilla" of evidence, but the actual amount of corroboration will necessarily vary from case to case. *Timberlake's Adm'r v. Pugh*, 158 Va. 397, 402–3 (1932); *Penn v. Manns*, 221 Va. 288, 293 (1980).

The Court disagrees with the defendants' argument that the evidence offered to corroborate Hicks's testimony must relate solely to whether Williams grabbed and pulled the steering wheel causing the vehicle to go out of control. Rather, the issue is whether there is evidence, which if believed by the fact finder, corroborates Hicks's testimony that the accident was caused by Williams grabbing and pulling on the steering wheel. In *Penn v. Manns, supra*, Manns was driving his car taking Penn to the hospital. Penn had been shot in the chest. Mann was involved in an accident in which Penn was killed. Penn's estate sued Manns for negligence. Manns testified that the reason he lost control was that Penn said, "Oh, I'm dying," and fell against Manns causing Manns to lose control of his car. Penn's estate

---

[3] While § 8.01–397 has been applied in automobile negligence cases, it has never been applied in a declaratory judgment case where one party relies on the testimony of another party to resolve rights between it and several other parties. Here, one party, USF&G, relies on the evidence of another party, Hicks, to resolve rights between parties to the litigation.

argued that Manns's testimony explaining that it was Penn who caused Manns to lose control was uncorroborated testimony and therefore could not be asserted by Manns in defense of the claim by Penn's estate. The Supreme Court rejected this argument finding that credible medical evidence was presented that Penn's wound could have caused dizziness which, if believed, tended to corroborate Manns's testimony that Penn became dizzy and fell against him causing him to lose control. The medical evidence presented did not prove that Penn fell against Mann. Rather, the corroborating evidence regarding Penn's medical condition was evidence that, if believed, would corroborate Manns's account of the accident.

Here, there is no direct corroborating testimony that Williams grabbed and pulled the steering wheel as Hicks was driving. However, there is evidence that, if believed, would corroborate Hicks's testimony. First, numerous witnesses testified that Hicks and Williams were arguing at the Thomas grocery store just before the accident. Second, the testimony of one of the occupants of the Hawkins vehicle is consistent and corroborates Hicks's account that the car swerved perhaps as many as three times before it came into the path of the Hawkins car. This evidence corroborates Hicks's account of Williams grabbing the steering wheel. While such evidence would not be sufficient to support a verdict in favor of Hicks or against the Williams estate, it is more than a scintilla.

*Hereford v. Paytes*, 226 Va. 604 (1984), does not require a finding that USF&G has failed to meet its evidentiary burden under § 8.01–397. As noted in that case, in order for Paytes to recover, Paytes had to testify to explain why his vehicle was on the wrong side of the road when the accident occurred. The critical issue there was which of the two vehicles first left its lane of travel and went into the other lane. There was no evidence beyond Paytes's own testimony that it was the oncoming vehicle as opposed to Paytes's vehicle that crossed the center line first since the occupants of the oncoming car were killed. Here, Hicks has presented corroborating evidence that at the time the accident occurred, Williams was angry and hostile to Hicks as evidenced by what occurred prior to the accident at the Thomas grocery store. If the witnesses who observed Hicks and Williams at the store are believed, the fact finder need not rest solely upon Hicks's credibility as to whether Williams was sufficiently angry to grab the steering wheel.

After viewing all of the evidence presented, I find that USF&G has met its evidentiary burden and there is sufficient corroborative evidence to decide the two insurance coverage issues.

### "Use" of the Automobile

The USF&G policy issued to Hicks obligates it "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay . . . because of . . . bodily injury . . . sustained by any person . . . arising out of the ownership, maintenance or use of the owned automobile . . . ." Under the USF&G policy, Williams was an "insured" since he was a resident of the same household as Hicks, the named insured. The issue presented is whether Williams, in grabbing the steering wheel while the vehicle was being operated by Hicks, could become legally obligated to pay damages to another because such conduct arose out of the use of the Hicks vehicle.

This Court concludes that the answer to this question is controlled by the Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Rice*, 239 Va. 646 (1990). In that case, the insured, Vest, and his friend Rice were going hunting.[4] When they arrived at their destination, Vest and Rice exited the vehicle. As Vest reached back into the vehicle to get his rifle, it discharged and struck Rice who at that time was a fair distance away from the vehicle. Rice made a claim for personal injuries against Vest and State Farm which insured Vest's vehicle. In deciding that the incident was within the coverage of the State Farm automobile policy, the Supreme Court found that the accident arose out of the use of the jeep. 239 Va. at 649. In finding that State Farm owed Vest a defense, the Supreme Court looked beyond the fact that Vest had ceased driving the jeep or that he was reaching inside for his rifle or that it was the rifle that caused injury to Rice. Once "a sufficient nexus" was found between the injury to Rice, a passenger, and the vehicle which transported the men to the hunting site, then the requisite causal relationship between the accident and the vehicle existed regarding Vest's "use" of the vehicle obligating State Farm to provide coverage. 239 Va. at 650.

In this case, Williams was inside the vehicle as it travelled down Route 20. The accident occurred allegedly because Williams pulled

---

[4] The insured's vehicle was actually owned by Vest's wife and Vest was an insured because he was a "permissive user" and deemed to be entitled to coverage if the accident arose out of the use of the vehicle. 239 Va. at 648.

on the steering wheel causing the vehicle to go out of control. Clearly, if this evidence is believed, there is a sufficient nexus between Williams' conduct involving the use of the vehicle and the accident that occurred.

Accordingly, the Court finds that under the circumstances here, Williams was an insured within the meaning of the USF&G policy.

### Exclusion by Intentional Act

Having found that Williams' conduct constituted "use" of the automobile at the time the accident occurred, the final issue raised by USF&G is whether Williams' conduct is subject to the exclusion clause. More specifically, the USF&G policy provides that it does not apply "to bodily injury or property damage caused intentionally by or at the direction of the insured . . . ."

In deciding this issue, one must begin with the well settled proposition in Virginia that "language in an insurance policy purporting to exclude coverage for certain events will be construed most strongly against the insurer." *Johnson v. Insurance Co. of No. America*, 232 Va. 340, 345 (1986). The burden rests upon the insurer to prove that the exclusion applies. *White v. State Farm*, 208 Va. 394, 396 (1967).

Here, the Court credits the testimony of Barbara Hicks regarding the actions of Williams in grabbing the steering wheel. The Court also credits Hicks's testimony that before the accident, Williams had consumed considerable amounts of alcohol and had been verbally abusive to Hicks. The Court also credits her testimony that earlier on the same evening, Williams, without warning, grabbed the gear shift and attempted to change gears while the vehicle was in motion.

Having accepted Hicks's testimony does not decide the issue. The exclusionary clause relied on by USF&G excludes from coverage bodily injury that is "caused intentionally by" the insured. This Court's construction of that clause is that the policy excludes coverage under Part 1 if the bodily injury claimed was intentionally caused by the insured. Intentionally, as used here, must refer to the insured's state of mind with regard to having an intent to cause injury to another person. It is not enough for this Court to find that Williams committed an intentional act. It is the intention to cause injury by the act of the insured that is excluded from the policy.

USF&G's argument is in essence that if an intentional act is committed which then causes bodily injury, then it is excluded from lia-

bility coverage. However, the policy does not use that language. It does not refer to intentional acts. It refers to bodily injuries which are caused intentionally by the insured.

Here, I cannot find that when Williams grabbed the steering wheel he intended to cause injury to Hicks or any of the occupants of the other vehicle. At best this Court concludes that Williams did intend to grab the steering wheel which, under any view, would be considered an act of extreme recklessness. However, I cannot find that he intended to cause bodily injury by committing this reckless act. As he did when he earlier attempted to change gears while the vehicle was in operation, he could well have grabbed the steering wheel to further harass or frighten Hicks. However, the evidence is simply insufficient for this Court to conclude, as the language of the policy requires, that Williams intended to cause injury to Hicks or to anyone else when he grabbed the steering wheel.

Accordingly, the Court concludes that the exclusion under the policy does not apply.

For the reasons stated herein, the Court finds that the USF&G insurance policy does provide coverage to Williams' estate for claims of personal injury arising out of the accident that occurred on October 13, 1989.