## CIRCUIT COURT OF FAIRFAX COUNTY

Progressive Casualty Ins. Co.

v.

Arban

April 22, 1994

Case No. (Law) 125443

BY JUDGE THOMAS A. FORTKORT

This case came to be heard on plaintiff Progressive Casualty Insurance Company's petition for declaratory relief. Three other companies (Republic Insurance Company, Travelers Insurance Company, and Insurance Company of North America) joined in the petition.

On November 22, 1990, defendant Captain Daryl F. LaClair, an Arlington County Deputy Sheriff, was driving his marked vehicle on Lee Highway in Arlington County. A car in front of him was driving erratically. Captain LaClair supposed that the driver of the car was attempting to read a map and that he was probably lost. The car driven by the decedent, Marcus Arban, was in the left hand lane. As Captain LaClair began to overtake the vehicle and pulled along side the vehicle in the right lane, the vehicle sped up, moved in front of Captain LaClair's vehicle in the right lane, and stopped. Captain LaClair assumed that Arban was stopping for directions. He turned his wheels to the curb, switched on his emergency bar flashers, turned his headlights onto high beam, and projected his spotlight into Arban's rear view mirror. Each of these procedures is standard for sheriff's vehicles making a traffic stop.

Captain LaClair stepped out of his vehicle and began to approach Arban. When Arban began to open his door, Captain LaClair cautioned him to remain in his car. The door continued to open wider, and Arban was again told to remain in the car. Suddenly, Captain LaClair felt a blow to his elbow. As he turned to examine his elbow, a bullet grazed

his head cutting through his eye lid and exiting his eye brow. Captain LaClair dove between Arban's car and his sheriff's vehicle to avoid further shots. As the Arban car began to leave the scene, Captain LaClair, partially blinded, managed to fire five shots into the rear of Arban's car. He was taken to Arlington Hospital where he ultimately recovered from his wounds.

Prince William County Police attempted to serve a search warrant on Arban the following day. He resisted the police entry into his home. Arban and Prince William Police Officer Pennington died during an exchange of gunfire.

Captain LaClair instituted a civil suit in Arlington County against Arban's estate. Petitioner Progressive is the primary carrier of Arban's automobile insurance. Travelers Insurance Company (Travelers) is the carrier for Captain LaClair's personal automobile insurance. The Insurance Company of North America (INA) is the automobile carrier for the Arlington Sheriff's Department. Republic Insurance carries Arban's homeowner's policy.

Progressive seeks a declaratory judgment that it is not liable to cover Arban's estate in the Arlington tort action on three grounds. The first ground is that there is no coverage; the incident did not arise out of the ownership, maintenance, or use of an automobile. Secondly, Progressive argues that its policy excludes intentional torts by its insured. Lastly, Progressive contends that it did not receive notice of the lawsuit from the insured's estate. INA and Travelers have joined Progressive on issues one and two above. Both Travelers' and INA's liability would rest on underinsured or uninsured claims under their policies.

After hearing testimony, the Court determined as a matter of fact that the shooting of Captain LaClair was an intentional, not an accidental act, and that Arban was still partially inside his car at the time he fired the shots at Captain LaClair. Finding Arban's actions to be intentional, the Court determined that Progressive's policy excluded coverage as a matter of law under the terms of its policy exclusions. Additionally, a compromise was achieved between Captain LaClair and Republic Insurance, reflected in an order of this court on March 8, 1994, effectively relieving Republic of any further liability flowing from this incident.

Following argument by counsel, the Court took under advisement whether the policies of INA or Travelers covered the actions of Arban. The remaining legal issue is whether the circumstances of this case

constitute "use" of an automobile as that term is employed in the insurance policies as interpreted by the case law of this Commonwealth.

Virginia courts first explored this issue in *State Farm Mutual v. Powell*, 227 Va. 492 (1984). *Powell* involved a man who drove in a pickup truck to a park where he was to meet a group of friends. A loaded gun rested in a permanently-affixed gun rack behind the seat. As the man remained in the driver's seat, a friend approached the passenger side door. The gun accidentally discharged, killing the friend. Applying basic insurance principles, the Virginia Supreme Court held that "even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle." *Powell*, 227 Va. at 500, citing to 12 G. Couch, *Insurance 2d*, § 45:56 (2d ed. 1981); 6B J. Appleman, *Insurance Law and Practice*, § 4317 (R. Buckley ed. 1979); and 8 D. Blashfield, *Automobile Law and Practice*, § 317.1, at 506 (3d ed. 1966).

With this, the Virginia Supreme Court established the standard for future "ownership, maintenance, or use" cases. Denying coverage, the court failed to find a causal relationship, instead finding the pickup truck to be the "mere situs" of the incident. *Powell*, 227 Va. at 501. "The vehicle was equivalent to a park bench, a picnic shelter, a tent, or a shed in that it was being employed as a gathering place for friends and not for any specific enterprise usually associated with use of a passenger, farm utility vehicle." *Id*. Further, the decedent's relationship to the vehicle — he was not, nor did he intend to become, a passenger — also contributed to the Court's decision.

Employing the *Powell* analysis in a more recent decision, the Virginia Supreme Court reached the opposite conclusion on similar facts. In *State Farm Mutual v. Rice*, 239 Va. 646 (1990), two men drove in a Jeep to a site from which they intended to commence their hunting expedition. One man exited the vehicle and began to walk away. The driver remained in the vehicle, emptying his thermos and loading his rifle. He placed the rifle on the seat beside him, and the rifle discharged, injuring the first man. The court found that a "sufficient nexus existed between the [injured] who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site." *Rice*, 239 Va. at 650. Distinguishing *Powell*, the *Rice*

court decided that the driver "had not completed his use of the Jeep when the rifle discharged," and therefore, coverage was afforded under the Jeep's liability insurance policy. *Id.*

The Virginia Circuit Courts have also recently grappled with the "ownership, maintenance or use" fact patterns. The Richmond Circuit Court in *Hartfield v. Liberty Mutual Ins. Co.*, 31 Va. Cir. 240 (1993), held that a shooting from one car into another when both were travelling on Interstate 95 provided the requisite causal nexus. Finding the vehicle to be "the accessory for inflicting the injury," the court indicated that "the shooting would not have occurred but for the placement of the vehicles then moving . . . and the vehicle provided the means to leave the scene." *Hartfield* at 241.

From the abundance of cases outside the Commonwealth which purport to illuminate this issue, one decision of the Oklahoma Supreme Court is based on a set of facts substantially similar to the case at bar. In *Willard v. Kelley*, 803 P.2d 1124 (Okla. 1990), a police officer on patrol spotted a suspected armed robber in another vehicle. The officer began to chase the suspect and the suspect's car collided with two other vehicles before coming to rest. The officer exited his vehicle and approached the suspect's car. Still seated in his vehicle, the suspect shot the officer. The Oklahoma high court reversed and remanded, stating that the trial court had erroneously entered summary judgment without allowing the trier of fact to determine whether the officer's injuries arose from "use" of the suspect's vehicle. Important to this analysis, the court indicated, were certain facts of the incident, several of which are also present in the instant case. These include the fact that (1) the shooter rested his gun on the car's "window sill" as he opened fire; (2) the shooter remained in his car; and (3) the shooter left the scene by driving away. *Willard*, 803 P.2d at 1131. In light of these circumstances, the court continued, "the purpose of the gun's use might be viewed by the trier of fact as identical to that for which the car was used — to impede [the officer's] pursuit and to facilitate [the shooter's] effective getaway." *Id.* Significantly, the court reminded the trial court that, "UM-covered use is limited *neither* to the car's driving *operation nor to the lawfulness* of the use." *Id.* (emphasis in original).

Against this framework of case law, it is apparent that while the "sufficient nexus" standard is simply described, its application proves to be more complex. Indeed, few definitive rules have emerged from the cases which would mandate this Court's decision. Accordingly, this

Court finds that the particulars of this case satisfy the sufficient nexus test. "Nexus" has been described by Webster's New Collegiate Dictionary as a "means of connection between things" or a "link." Certainly Captain LaClair's injuries were linked to the "use" of the vehicle by Arban. Arban's vehicle, in a fundamental way, was used to facilitate the act which produced the injury to Captain LaClair. Arban used his vehicle first to lure Captain LaClair into stopping behind him, then as a shield, from behind which the shots were fired, and finally as a swift means of escape.

Like the vehicle in *Hartfield*, Arban's car was the instrumentality and the accessory for inflicting Captain LaClair's injuries. This court finds that Arban's vehicle was more than the mere situs of the incident and that Captain LaClair's injuries are covered under the uninsured motorist provisions of both INA's and Travelers' policies.