**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**Robert BRIGHT, et al., Defendants.**

**Civ. A. No. 92–0051–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

May 2, 1994.

Howard C. McElroy, White, Bundy, McElroy, Hodges & Sargent and William M. Moffet, Penn, Stuart, Eskridge & Jones, Abingdon, VA, for plaintiffs.

James Edward Slone, Grundy, VA, for defendants.

## MEMORANDUM OPINION

KINSER, United States Magistrate Judge.

State Farm Mutual Automobile Insurance Company ("State Farm") and Allstate Insurance Company ("Allstate") [1] seek a declaratory judgment that their respective policies of automobile liability insurance do not cover the shooting death of Wadie Rebecca Justus ("Becky Justus"). Jurisdiction of this court is under 28 U.S.C.A. § 1332 and § 2201 (West Supp.1994). Pursuant to consent of the parties entered under the authority of 28 U.S.C.A. § 636(c)(2) (West 1993), State Farm's and Allstate's motions for summary judgment are presently pending before the undersigned United States Magistrate Judge. For the reasons stated hereinafter,

---

1. State Farm originally named Allstate as a defendant, but the court realigned Allstate as a plaintiff in an order dated September 9, 1993.

summary judgment will be entered for State Farm and Allstate.

## FACTS

Becky Justus was fatally injured by a gunshot while sitting in the passenger seat of a 1989 Trans Am automobile ("the Automobile") driven by Robert Bright ("Bright"). Bright's father, Floyd Bright, owned the Automobile and had insurance with State Farm under Family Automobile Policy No. 480 4134 F15–46Z. Allstate provided uninsured motorist coverage to Becky Justus through her parents' Automobile Policy No. 052474211.[2] Both of these policies obligate the respective insurance company to

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by any person;

    \*     \*     \*     \*     \*     \*

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile....[3]

Shortly before 8:00 P.M. on December 1, 1989, in Buchanan County, Virginia, Becky Justus rode as a passenger in the Automobile with Bright to a store to purchase cigarettes. While at the store, a confrontation occurred between Bright and Jessee Vanover ("Vanover"). After a verbal exchange, Bright and Becky Justus drove away but returned several minutes later. This time, Roger Lester ("Lester"), who was with Vanover, approached the Automobile and confronted Bright while Bright was sitting behind the steering wheel. Becky Justus still occupied the passenger seat. Bright then withdrew a loaded firearm, which he kept in the Automobile[4], shot, and killed Lester. Bright and Becky Justus remained in the car after the shooting but did not leave the store's parking lot. Soon thereafter, Vanover approached the Automobile, pulled out a shotgun, and fired into the Automobile. The shot missed Bright as he ducked, but it struck and killed Becky Justus. Bright then left the store and took Becky Justus to the hospital.[5]

As a result of this incident, Hayes Justus, Jr. ("Hayes Justus"), as the administrator of the estate of Becky Justus, who was seventeen years of age at the time of her death, filed a wrongful death action in the Circuit Court of Buchanan County against Bright. In this action, Hayes Justus alleged that Bright had a duty to "exercise care with regard to [Becky Justus] to avoid exposing her to ... danger ..., to exercise ordinary care with regard to the operation and use of his vehicle and the instrumentalities carried therein so as to avoid injuries to [Becky Justus] ..., [and] to avoid transactions which could be reasonably foreseen to result in harm to [Becky Justus]...."

State Farm then instituted this action for declaratory judgment regarding the coverage of its insurance policy to the death of Becky Justus.[6] State Farm named as defendants Floyd Bright; Robert Bright; Hayes Justus, individually and as the administrator of Becky Justus' estate; Becky Justus' mother and half-siblings all of whom are potential statutory beneficiaries in the wrongful death action; and Allstate. The court entered default judgment against all these defendants except for Allstate which was realigned as a

---

**2.** The parties agree that if there is no coverage under the State Farm policy then there is likewise no coverage under the Allstate policy. Throughout these proceedings, Allstate has joined in State Farm's motions and argument.

**3.** Both insurance policies contain identical language.

**4.** Bright was employed as a security guard for a coal company during a mine strike. Because of his work, he was licensed to carry firearms and was trained in their use. Bright routinely kept several guns in the Automobile with him.

**5.** These facts are not disputed by the parties and are contained primarily in the transcripts in the cases of *Commonwealth of Virginia v. Robert Eugene Bright* and *Commonwealth of Virginia v. Jessee Lee Vanover.* The parties stipulated that these transcripts can be considered in deciding the motions for summary judgment.

**6.** In *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir.1994), the court upheld the use of declaratory judgment to resolve coverage issues even though a tort action was pending in state court.

plaintiff, and Becky Justus' parents, Hayes Justus and Bobbie Ann Justus.

## ANALYSIS

■ Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Since there are no material facts in dispute, the question before the court is whether the automobile insurance policies issued by State Farm and Allstate provide coverage for the shooting death of Becky Justus. The operative language which addresses the coverage issue is "arising out of the ownership, maintenance, or use" of the automobile. State Farm and Allstate assert that there is no coverage because there is no causal relationship between the shooting and the use of the Automobile as a vehicle. Becky Justus' parents, on the other hand, premise their claim of coverage on the argument that "but for" Bright's driving the Automobile to the store initially and then returning after the first confrontation, Becky Justus would not have been shot. They also argue that Bright failed to provide for Becky Justus' safety by not leaving the store after he shot Lester and that Vanover's response to the first shooting was foreseeable by Bright.

Since this case arises under the court's diversity jurisdiction and requires the application of Virginia law, *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the court finds instructive the decisions of the Supreme Court of Virginia concerning this issue. In *State*

*Farm Mut. Auto. Ins. Co. v. Powell,* 227 Va. 492, 318 S.E.2d 393 (1984), the court dealt with "whether a death resulting from discharge of a shotgun, resting in a gun rack affixed to a pickup truck, arose out of 'use' of the vehicle...." *Id.,* 318 S.E.2d at 394. The driver of the truck and one passenger drove to a park where they met other friends. A shotgun was resting in a gun rack which had been installed in the truck after its purchase. At the park, the driver and the passenger remained in the truck and conversed with friends who stood outside on the passenger's side. One friend opened the passenger door and sat on the side of the seat. Without any explanation or unusual movement by the occupants of the truck, the shotgun discharged and killed one of the individuals standing at the open door on the passenger side.

■ In concluding that the automobile insurance policy did not provide coverage for this incident, the court stated the following general principles:

[C]onsideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded.... In addition, the "ownership, maintenance, or use" provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their natural and ordinary meaning.... Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle.... Furthermore, consideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its "use."

*Id.,* 318 S.E.2d at 397. Thus, *Powell* requires consideration of both the status of the victim, whether as a passenger or bystander, and the relationship between the incident and the use of the vehicle as a vehicle. Nei-

ther factor alone, however, is dispositive of the issue of coverage under the policy.

Applying these principles, the *Powell* court concluded that the truck was merely the "situs for a social gathering" and was "being employed as a gathering place for friends and not for any specific enterprise usually associated with use of a passenger, farm utility vehicle." *Id.* at 398. Moreover, the court emphasized that the victim was not a passenger and did not intend to become an occupant of the truck.[7]

In *State Farm Mut. Auto. Ins. Co. v. Rice,* 239 Va. 646, 391 S.E.2d 71 (1990), the Virginia Supreme Court dealt with a hunting accident that stemmed from the discharge of a shotgun which was resting on the truck seat. In *Rice,* the victim and another man drove into the woods on a hunting trip. Both men exited the vehicle, and the driver placed his loaded gun on the front seat while he drank some coffee. When he picked up his gun, it discharged and hit the other man as he was walking toward the ridge. Unlike the victim in *Powell,* who had only a remote connection to the vehicle, the court concluded that "[e]ven though Rice[, the victim,] had completely alighted from the Jeep and was walking toward a ridge where he intended to begin his hunt, a sufficient nexus existed between Rice, who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site." *Id.,* 391 S.E.2d at 73. Thus, the court awarded coverage.

Becky Justus' parents argue that, after *Powell,* the pertinent inquiry is what the injured person was doing and even conceded during oral argument that their position would be different if she had been out of the Automobile at the time of the shooting. Becky Justice's status as a passenger, however, is not alone sufficient to invoke coverage. While the victim's status as a passenger is an important consideration, the *Powell* court also emphasized the need for a "causal relationship between the accident and employ-

ment of the insured motor vehicle *as a vehicle.*" *Powell,* 318 S.E.2d at 397. (emphasis added).

The relationship between the accident and the employment of the insured vehicle as a vehicle has been a deciding factor for numerous other courts. For example, the Fourth Circuit Court of Appeals, in applying South Carolina law, found no coverage when a passenger caused the driver of the insured vehicle to collide with his wife's vehicle; and the passenger then got out of the truck and fatally shot his wife while she was trapped in her vehicle. *Nationwide Mut. Ins. Co. v. Brown,* 779 F.2d 984 (4th Cir.1985). The court stated that "[a]n automobile policy cannot properly be construed to cover injuries that result from acts wholly disassociated from, independent of, or remote from the use of the vehicle." *Id.* at 988 (quoting *Government Emp. Ins. Co. v. Melton,* 357 F.Supp. 416, 418 (D.S.C.1972), *aff'd,* 473 F.2d 909 (4th Cir.1973)).

> Cases construing the phrase "arising out of the ... use of a motor vehicle" uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. ([c]itation omitted.) Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. ([c]itations omitted.)

*Id.* at 989 (quoting *Detroit Auto. Inter–Ins. Exch. v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414, 419 (1980)); *See also Snouffer v. Williams,* 106 Wis.2d 225, 316 N.W.2d 141 (1982) (no coverage for an injured passenger in the insured vehicle when he was shot by a homeowner whose property was being vandalized by the other passengers); *Florida Farm Bureau Ins. Co. v. Shaffer,* 391 So.2d 216, 218 (Fla.App.1980), *pet. denied* 402 So.2d 613 (1981) ("[T]he fact that an automobile was used to transport the assailant to the scene and the fact that the gun

---

**7.** The court used this fact to distinguish the cases of *Reliance Ins. Co. v. Walker,* 33 N.C.App. 15, 234 S.E.2d 206 (1977), *cert. denied,* 293 N.C. 159, 236 S.E.2d 704 (1977), and *Transamerica Ins. Group v. United Pacific Ins. Co.,* 92 Wash.2d 21, 593 P.2d 156 (1979), which involved the accidental discharge of guns resting in or being removed from permanently attached gun racks in vehicles. In both cases, the courts found coverage under the automobile insurance policies.

498

which produced the injury was thereafter fired from such automobile do not constitute sufficient circumstances to establish a causal relationship between the use of the automobile and the injury for purposes of invoking the automobile liability insurance coverage of the assailant."); *Nationwide Mut. Ins. Co. v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341 (1977), *cert. denied* 293 N.C. 589, 239 S.E.2d 263 (1977) (A gunshot from a chasing vehicle which injured a minor passenger in the fleeing vehicle was not an accident arising out of the "ownership, maintenance and use" of the insured vehicle).

This court also finds persuasive the analysis in 12 George Couch, *Couch on Insurance* § 45.57 (2d rev. ed. 1981):

The use of an automobile may result in a condition which is an essential part of the factual setting which later results in harm. Such antecedent "use" of the automobile is distinct from the harm which thereafter arises from the condition created by the use of the automobile and such later harm does not arise from the "use" of the automobile and is not covered; the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy.

In establishing the causal relationship, these authorities make clear that a "but for" analysis is not appropriate. That is, "but for" Bright's driving the Automobile to the store and then failing to recognize the danger of remaining in the parking lot after he shot Lester, Becky Justus would not have been shot. Although these assumptions may be accurate, they do not create the necessary causal relationship between her death and the inherent use of the Automobile as a vehicle. Obviously, the use of the Automobile preceded the harm that came to Becky Justus and was ostensibly a part of the factual setting, but the harm did not arise out of the "use" of the Automobile as a vehicle.

In fact, the harm in this case originated from an external source.[8] The murder weapon had no connection with the Automobile whatsoever. It was not transported to

the scene in the Automobile nor had it ever been stored in the Automobile on any prior occasion. That Bright shot Lester first with a gun which Bright stored in the Automobile does not change the result. Although Bright routinely carried guns in the Automobile because of his employment, his use of the gun on this occasion had no connection with his employment or with the use of the Automobile to facilitate his employment.

After considering Becky Justus' status as a passenger and the attenuated connection between the incident and the use of the Automobile as a vehicle, this court concludes Becky Justus' death did not arise out of the "ownership, maintenance or use of the ... automobile."

## CONCLUSION

For these reasons, the court concludes that there is no coverage under the State Farm or Allstate automobile insurance policies for the shooting death of Becky Justus. The harm to her did not arise "out of the ownership, maintenance or use" of the Automobile. Therefore, the motions for summary judgment filed by State Farm and Allstate will be granted.

---

8. The court does not mean to intimate that solely because the harm originated from an external source to the Automobile that coverage should be precluded. The source of the harm is just one factor to consider. In fact, determining whether a particular incident falls under the coverage of an insurance policy does not lend itself to simple judicial formulas. Instead, many factors must be considered, and each case should be considered in light of its own peculiar factual setting.