## CIRCUIT COURT OF THE CITY OF RICHMOND

Progressive Am. Ins. Co.

v.

Willie C. Starling,
Northfield Ins. Co.,
and Bernard Silva

October 26, 2001

Case No. HN-1720

BY JUDGE T. J. MARKOW

This case is before the Court on a Bill of Complaint for a Declaratory Judgment. Progressive American Insurance Company, Starling's auto liability carrier, alleges that Bernard Silva's injuries are not the result of the use of an automobile. Northfield Insurance Company, Starling's commercial liability carrier, alleges that its automobile exclusion applies to Silva's injuries to prevent coverage. Silva argues that neither exclusion applies and both policies provide coverage.

Briefly, the facts in this case are as follows. W. C. Starling removes and trims trees as a sole proprietorship, W. C. Starling Tree Service. On December 19, 1999, Starling, two members of his crew, and Bernard Silva were felling trees on private property owned by David Russell. Starling set up a rope and pulley system in order to exert force on a tree to be felled to prevent the tree from falling on Russell's residence. The rope was tied to a ball hitch on Starling's truck, run through the pulley, and tied to the tree. Starling's intent was to use the truck to pull the tree away from the house as it began to fall.

Starling was operating the truck. Silva stood behind the driver's door of the truck, acting as a spotter, telling Starling what the "saw man" was doing. As Starling pulled forward with the truck, Silva was injured when the rope struck him thereby causing him to fall and suffer significant injuries. Silva has filed a Motion for Judgment against Starling alleging, among other

things, that Starling negligently planned and executed the operation and that he negligently operated his truck on December 19, 1999, thereby causing Silva's injuries.

At the time of the accident, W. C. Starling Tree Service owned a 1988 Chevrolet dump truck that was covered by a business auto insurance policy with Progressive American Insurance Company. W. C. Starling Tree Service was also covered on that date by a commercial general liability policy with Northfield Insurance Company.

*Auto Insurance Policy*

Petitioner Progressive alleges that its auto insurance policy does not apply in this accident because the injuries complained of by Silva in his Motion for Judgment did not result from the ownership, maintenance, or use of a covered auto as required by the policy.

Virginia's Supreme Court established the principles for determining when an accident arises out of the use of an automobile in *State Farm Mutual Auto. Ins. Co. v. Powell*, 227 Va. 492, 318 S.E. 2d 393 (1984), and applied those principles in *State Farm Mutual Auto. Ins. v. Rice*, 239 Va. 646, 391 S.E.2d 71 (1990).

In *Powell* the main question was whether a death resulting from a discharge of a shotgun, resting in a gun rack affixed to a pickup truck arose out of "use" of the vehicle under the circumstances of this case.

During the afternoon of April 6, 1980, David C. Good, accompanied by a female companion, drove his pickup truck to Gypsy Hill Park in Staunton, where they met three friends, including Keith Powell. One of the three entered Good's truck and sat on the passenger side of the seat while Good and his companion remained seated in the vehicle. Powell initially walked to the driver's side of the truck and talked with Good. After a few minutes, Powell walked to the other side of the truck where he stood adjacent to the open door on the passenger's side.

Shortly, the group heard the sound of an explosion and saw Powell fall to the ground. He had been hit in the abdomen by shot (*Id.* at p. 496) from the weapon. The shot passed through the truck body just behind the doorpost. Powell died as the result of the shotgun wound.

The witnesses agreed that no person touched the shotgun or the gun rack and that there was no unusual movement by any of the three persons inside the truck when the blast occurred. The cause of the discharge apparently is unknown.

The court stated that:

> [C]onsideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded. In addition, the "ownership, maintenance, or use" provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their natural and ordinary meaning. Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle. Furthermore, consideration must be given to what the insured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its "use."

*Powell*, at 500-01, 318 S.E.2d at 397 (citations omitted). The Court applied these principles to the specific facts in *Powell* and concluded that Powell's death did not arise out of the use of the insured vehicle. In *Powell*, the insured truck was merely the situs of a social gathering. The truck was not being used "for any specific enterprise usually associated with use of a passenger, farm utility vehicle." *Id.* at 501, 318 S.E.2d at 398. The requisite causal relationship between the accident and the employment of the truck as a vehicle for imposition of coverage on the automobile carrier did not exist. Powell was not a passenger in the insured vehicle; nor did he intend to become a passenger. The victim in *Powell* had only a remote connection with the truck as one of a group of persons who had gathered near the truck to socialize. *Id.*

In *Rice*, two men embarked on a hunting trip in the insured vehicle. They arrived at the point from which they planned to hunt before dawn and sat in the vehicle drinking coffee for a while. One of the men got out of the vehicle and reached into the back seat for his rifle, which he loaded and placed on the front seat. When he reached to pick up his rifle, it discharged, injuring the other man, who was walking away from the vehicle. The chancellor concluded that the accident arose out of the use of the vehicle. The insurer appealed.

The Court found that application of the *Powell* principles to this case demonstrated that the accident arose out of the use of the Jeep. The specific enterprise associated with the use of the Jeep was to transport Vest, Rice, their rifles, ammunition, and other hunting equipment to the location where they intended to embark upon their hunting expedition. At the time of the

accident, Vest was in the process of placing a thermos in the Jeep and was removing his loaded rifle from the Jeep. These items which were used for the hunt were transported in the Jeep. The door on the driver's side of the Jeep was still open at the time of the accidental discharge. Even though Rice had completely alighted from the Jeep and was walking toward a ridge (*Id.* at p. 650) where he intended to begin his hunt, a sufficient nexus existed between Rice, who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site. Vest had not completed his use of the Jeep when the rifle discharged. The Court concluded that the requisite causal relationship between the accident and employment of the Jeep as a vehicle for imposition of coverage on the automobile carrier existed.

Application of the *Powell* and *Rice* principles to the facts in the case at bar lead to the conclusion that the injuries complained of by Silva in his Motion for Judgment arose out of the use of the dump truck. Starling thought that a large tree, once cut, might fall on Russell's house unless he could control its direction. He planned to do this by using his truck to pull the tree away from the house. Thus the specific enterprise at the time of the accident was felling the large tree while preventing it from falling on Russell's residence by using the truck to control the fall.

Silva was to stand near the truck and inform Starling of the actions of the "saw man," so that Starling could determine when to move the truck forward in order to control the direction of the falling tree. Silva was an integral part of this activity, and stood near the truck in order to ensure successful completion of the enterprise. A sufficient nexus exists between Silva, who was directing the truck, and the truck itself, which was being used to pull the tree.

Like the driver in *Rice*, Starling was in the process of carrying out the specific enterprise and he had not completed his use of the truck as a vehicle when the injuries Silva complains of occurred. Unlike the driver in *Powell*, Starling's truck was not being used as a meeting place. Thus, application of the *Powell* and *Rice* principles to the facts of this case lead the Court to conclude that a causal relationship exists between Silva's injuries and Starling's use of the insured vehicle.

For these reasons the Court finds that Starling's policy with Progressive applies to the injuries sustained by Silva.

### Commercial General Liability Policy

Northfield Insurance Company alleges that it is not liable to Silva for any injuries he sustained on December 19, 1999, because its general liability

policy with W. C. Starling contains several exclusions including the automobile exclusion.

Silva argues that, because he alleges in the Motion for Judgment that Starling was negligent in arranging, planning, conducting, and supervising of the cutting of the tree, he has alleged a cause of action that has nothing to do with the operation of the truck.

Silva cites authority from other states espousing the "concurrent negligence" theory for coverage from both policies. It provides that both an automobile liability policy and a homeowner's liability policy provide concurrent coverage when the plaintiff has alleged that separate and independent acts of negligence caused the fire and subsequent injuries. See, e.g., *State Farm Mutual Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973); *Waseca Mutual Ins. Co. v. Noska*, 331 N.W.2d 917 (Minn. 1983); *Jorgensen v. Auto Owners Ins. Co.*, 360 N.W.2d 397 (Minn. App. 1985); *The Salem Group v. Oliver*, 248 N.J. Super. 265, 590 A.2d 1194 (Sup. Ct. of N.J. 1991).

While acknowledging that the Commonwealth of Virginia has not yet ruled on the issue of concurrent negligence, Silva urges the Court to find that Northfield's policy applies based on the general principle that where an insured risk and an excluded risk constitute concurrent proximate causes of the accident, the liability insurer must provide coverage so long as one of the causes is covered by the policy. *Braxton v. United Fire Ins. Co.*, 651 S.W.2d 616 (Mo. Ct. App. E.D. 1983).

Silva alleges that Starling negligently arranged, planned, and supervised the cutting of the tree. The Court does not find that this is a case of concurrent proximate cause. While all of these acts could have been negligently carried out, *but for* the use of the vehicle, plaintiff would never have been injured. Thus, plaintiff would have no cause of action against anyone if the dump truck had not been used to exert force on the rope. This situation is analogous to any rear-end collision in which the driver of the striking vehicle is tuning the radio while talking on his cell phone. Tuning the radio or talking on the cell phone while driving may be negligent acts, but party A is injured by party B's failure to stop in time. But for this failure, party A would never have been injured and, absent the failure to stop, party A has no cause of action. If that were not true, practically every auto accident case would implicate a homeowner's or other non-auto liability policy.

Further, construing the Northfield policy as Silva suggests makes the auto exclusion meaningless and the Court will not do that. Virginia's Supreme Court has determined that where the language of an insurance policy is unambiguous, the Court is to give the words their ordinary meaning and enforced the policy as written. *Atlas Underwriters, Ltd. v. Meredith-Burda,*

*Inc.*, 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986), as cited in *Star Diamond, Inc. v. Underwriters at Lloyd's, London*, 965 F. Supp. 763, 765 (E.D. Va. 1997).

Under the heading EXCLUSION-AUTO, the Northfield policy states: This insurance does not apply to any damages arising out of the ownership, maintenance, operations, use, chartering, renting, entrustment to others, loading or unloading of any "auto". This language is not only clear and unambiguous, but also typical of general liability policies. Giving this language its ordinary meaning, it is clear that the parties did not intend the outcome that plaintiff urges.

For these reasons, the Court finds that the Northfield policy exclusion applies to preclude coverage for the injuries alleged by Silva in his Motion for Judgment. Consequently there is no need to discuss Northfield's other arguments regarding contracted persons and independent contractors exclusions.

It is therefore ordered and declared that the Petitioner Progressive American Insurance Company Policy No. 04411404-0 issued to Willie C. Starling is applicable to and covers the injuries claimed by Bernard L. Silva for injuries received on December 19, 1999, as described in the pleadings. It is further ordered and declared that the defendant Northfield Insurance Company Policy No. CP363936 issued to Willie C. Starling, t/a Starling Tree Service, does not cover the loss.