# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SALLIE NEWSOMS v. COMMERCIAL CASUALTY INSURANCE COMPANY.

### March 17, 1927.

1. ACCIDENT INSURANCE—*"External, Violent and Accidental Means"*— *Ptomaine Poisoning or Acute Indigestion—Case at Bar.*—In the instant case, an action upon an accident policy, insured was enjoying his usual good health on the morning of his death. At about 9:30 o'clock on the day of his death he had for his breakfast some cold canned beans and white meat. Shortly thereafter he was taken ill with violent cramps and began vomiting the pork and beans, and declared to his daughter that the beans had made him ill; and died at 11:40 o'clock.

   *Held:* That, admitting that death resulted from ptomaine poisoning or acute indigestion brought on by eating the beans, the death resulted from "external, violent and accidental means" within the meaning of those terms as used in the policy.

2. ACCIDENT INSURANCE—*Definition of Accident.*—"Accident" is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens.

3. ACCIDENT INSURANCE—*Accident—Death from Ptomaine Poisoning—Case at Bar.*—In the instant case, an action on an accident policy, the evidence showed that insured had been in good health up to his eating canned pork and beans. There had been no warning that the beans were apt to affect insured's health. Insured died shortly after eating the pork and beans, from acute indigestion or ptomaine poisoning. Insured did not know they were harmful, nor are they inherently so by common knowledge.

   *Held:* That insured's death was accidental, as the death and accident was anything else but usual and anything else but expected.

4. INSURANCE—*Construction—Policies Construed Against Company.*—It is the universal rule of courts to construe language used in an insurance policy, to limit the liability of the company, strongly against the company. Any doubt or ambiguity is resolved in favor of the insured and against the insurer.

5. ACCIDENT INSURANCE—*Cause of Insured's Death—Question for Jury— Case at Bar.*—In an action upon an accident policy for the death of

insured, whether the insured's death was caused from ptomaine poisoning or acute indigestion from eating canned beans, is for the jury, and their finding is binding on the trial and appellate court. Even in the instant case if there was a conflict of evidence upon the question of the cause of the insured's death, this conflict was settled in favor of the plaintiff by the verdict of the jury, upon ample evidence.

Error to a judgment of the Circuit Court of the city of Newport News, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

                                  *Reversed.*

The opinion states the case.

*Nelms, Colonna & McMurran* and *Thos. L. Woodward*, for the plaintiff in error.

*Hughes, Little & Seawell*, for the defendant in error.

Chichester, J., delivered the opinion of the court.

Sallie Newsoms, plaintiff below and hereafter referred to as plaintiff, was the beneficiary in a policy of insurance for $700.00 upon the life of one William Reid. Upon the death of the assured, resulting from an alleged accident, during the life of the policy, which it is claimed met the condition that the policy insured against, among other things, viz: "Against the effects of injury resulting exclusively of other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means."

Upon the denial of responsibility by the company and refusal to settle the claim, action by notice of motion for judgment was instituted against the company, which resulted in a verdict in favor of the plaintiff in the sum of $700.00, which, upon motion of the defendant com-

pany, the trial court set aside and entered judgment for the defendant. The action of the court in setting aside the verdict and entering judgment for the defendant is assigned as error and is before us for review upon a writ of error duly granted.

The grounds upon which the defense rested were that William Reid did not die of the effects resulting directly and exclusively of all other causes from bodily injuries sustained through external, violent and accidental means, and that the death of William Reid was due to causes not insured against by the policy, but that' his death was due to natural causes.

The first ground of defense raises the legal question whether under the facts of this case, as the plaintiff contends they are established by evidence and the verdict of the jury, the plaintiff is entitled to recover.

The evidence shows that the insured had always enjoyed good health and that he was in his usual good health on the morning of May 13, 1924. About 9:30 or 10 o'clock on that day he ate for his breakfast, some cold canned beans and white meat; that shortly thereafter he was taken ill with violent cramps and began vomiting the pork and beans; that he declared to his daughter that the beans had made him ill, and that he died at 11:40 o'clock.

[1] Admitting for the time being that death resulted from ptomaine poisoning or acute indigestion brought on by eating the beans, the question is whether this was external, violent and accidental means within the meaning of those terms as used in the policy.

The authorities are not in entire harmony upon this question, but the weight of authority is to the effect that death resulting under the circumstances of this case, or circumstances similar to those testified to here, meets the condition of a policy requiring that death·

shall result from injuries sustained solely through external, violent and accidental means.

[2] In Vance on Insurance, page 569, it is said: "The definition of accident generally assented to is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens." (*McGlinchey* v. *Fidelity & Casualty Company*, 80 Maine 251, 14 Atl. 13, 6 Am. St. Rep. 191.) This definition has been so generally used and quoted as not to require additional citation.

[3] It can certainly not be contended that the accident here in issue was under usual circumstances or expected by the insured, but, on the contrary, the evidence shows that the insured had been in good health for much over a year and up until the very minute of eating the canned pork and beans; that there was no thought of injury in any way, nor had there been any warning by even slight sickness that the beans would be apt to affect insured's health in any extraordinary way. Insured did not know that they were harmful, nor are they inherently so by common knowledge. Under the circumstances, therefore, the death and accident were anything else but usual and anything else but expected.

In *Johnson* v. *Fidelity & Casualty Company*, 184 Mich. 406, 151 N. W. 593, L. R. A. 1916A, 475, it was held that ptomaine poisoning due to partaking of tainted food through mistake was within the terms of a policy insuring against death by external, violent and accidental means, the court said: "No question would be raised here, I take it, if the assured, by mistake, had taken carbolic acid, when he intended to take a helpful medicine. (*Travellers' Insurance Co.* v. *Dunlap*, 160 Ill. 642, 43 N. E. 765, 52 Am. St. Rep. 355.) Why, then, should it be said there is no

liability when the assured, intending to take nourishing food, in fact, took tainted food, which resulted in ptomaine poisoning and death?"

The case of *United States Casualty Co.* v. *Griffis*, 186 Ind. 126, 114 N. E. 83, L. R. A. 1917F, 481, is directly in point. Griffis, a lawyer in perfect health, went to a restaurant about 8 o'clock p. m. and ate some mushrooms; he thereupon, in company with his wife, went home, arriving about 9 o'clock p. m. About fifteen minutes thereafter deceased went to his room to retire, while his wife went to take a bath, where she was occupied about thirty minutes. Hearing water running in a sink near deceased's bedroom, his wife went to turn it off and found a quantity of mushrooms that had been vomited. Then going to deceased's bedroom he was found moaning and unconscious, shortly after which he died. The court held that this was within the terms of a policy insuring against injury resulting from external, violent and accidental means. Morris, J., in delivering the opinion of the court, said: "Under the facts pleaded and proven, Mr. Griffis intended only to eat wholesome mushrooms; but, unexpectedly to him, the mushrooms eaten contained a foreign substance that was a virulent poison and constituted an agency of such violent character as to subvert the normal functions of his vital organs and produce death possibly quicker than would have happened had the foreign substance been a corrosive acid poison. We quite agree with appellant's counsel when they say that the means must be accidental, and that a mere accidental result would not suffice under the language of this policy; but we are of the opinion that the unintentional taking of the poisonous substance contained in what deceased supposed to be edible mushrooms constituted an accidental means which caused the death."

See also *Mutual Life Ins. Co.* v. *Dodge* (C. C. A.), 11 Fed. (2nd Series), 486 (a petition for a writ of *certiorari* to the United States Supreme Court was denied May 24, 1926, 271 U. S. 677, 46 S. Ct. 629, 70 L. Ed. ——), which is also very much in point.

Other cases of interest and germane are *Gohlke* v. *Hawkeye, etc., Ass'n*, 198 Iowa 144, 197 N. W. 1004, 35 A. L. R. 1177; *Jenkins* v. *Hawkeye, etc., Association*, 147 Iowa 113, 124 N. W. 199, 30 L. R. A. (N. S.) 1181; *Christ* v. *Mutual Ins. Co.*, 312 Ill. 525, 144 N. E. 161, 35 A. L. R. 730.

[4] It is the universal rule of courts to construe language used in an insurance policy, to limit the liability of the company, strongly against the company. Judge Taft, now Chief Justice of the United States Supreme Court, speaking for the court in *Manufacturers' Accident Indemnity Co.* v. *Dorgan* (C. C. A.), 58 Fed. 945-956 (22 L. R. A. 620), said: "It is a well settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company strongly against the company. Policies are drawn by legal advisers of the company, who study with care the decisions of the courts and with those in mind attempt to limit, as narrowly as possible, the scope of the insurance. It is only a fair rule which courts have adopted to resolve any doubt or ambiguity in favor of the insured and against the insurer." This case cites, among other cases, *U. S. Mut. Acc. Association* v. *Newman*, 84 Va. 52, 3 S. E. 805.

See also *Smith* v. *Travelers' Insurance Company*, 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 872; *U. S. Mut. Acc. Ass'n* v. *Barry*, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 65; *Lewis* v. *Iowa State, etc.* (D. C.), 248 Fed. 602.

[5] The instructions given by the trial court in this case, to which there were no objections, recognized these general principles but the court seemed to think that there was not sufficient evidence to justify the jury in concluding that eating the beans had caused the death of the insured. This brings us to the second ground of defense.

Upon the whole case we think that the question of the cause of the insured's death was one for determination by the jury and that their finding was binding upon the trial court and, of course, upon this court.

Even if it be conceded that there was a conflict of evidence upon the question of the cause of the insured's death, this conflict was settled in favor of the plaintiff by the verdict of the jury upon ample evidence, as the brief statement of facts heretofore made abundantly shows, but as a matter of fact there was little or no conflict upon this point.

We are of opinion, therefore, that the circuit court erred in setting aside the verdict of the jury and entering judgment for the defendant company, and this court will set aside the judgment so entered and enter judgment for the plaintiff upon the verdict found by the jury.

*Reversed.*