**Carl Jay YOW**

v.

**AMERICAN HOME ASSURANCE COMPANY.**

**Civ. A. No. 78–0774–R.**

United States District Court, E.D. Virginia, Richmond Division.

Sept. 4,* 1979.

---

William N. Alexander, II, Greer & Alexander, Rocky Mount, Va., for plaintiff.

William B. Poff, Richard M. Thomas, Roanoke, Va., for defendant.

MEMORANDUM

WARRINER, District Judge.

This is a diversity action grounded upon two interrelated theories of recovery. Plaintiff asserts his right to recover contractual benefits under an accidental dismemberment insurance policy issued by defendant. He also seeks tort recovery and punitive damages for defendant's refusal to pay the contractual sum due. After extensive discovery the parties concluded there were no material issues of fact as to either basis for liability and by pre-trial order they submitted all questions of law and fact to the Court on the record. The question of damages, if liability be found, was reserved for a jury trial.

Plaintiff is a Methodist minister who had been subject to dizzy spells for some time. Despite this disability and despite his fear of injury, he was operating his woodworking saw on the afternoon of 16 March 1976. He was afflicted with a dizzy spell while operating the saw, fell against the saw, and severed his left hand above the wrist. Mr. Yow had a policy of insurance with defendant which provided for certain payments upon severance of his hand. He promptly notified defendant of the accident and submitted the requisite proof of loss. Proof of loss was received by defendant on 19 April 1976.

The claim was handled by one Michael Squilante, supervisor in defendant's New York office. He promptly initiated an in-

* Editor's Note: Released for Publication in 1985.

vestigation into the loss seeking to find, among other things, whether the injury might have been self-inflicted. The investigation showed no evidence that the loss was self-inflicted and this aspect of the matter received no further attention.

Defendant next sought further information as to the nature of the precedent dizzy spells. At the same time he sought a medical opinion as to whether there was "an underlying disease or illness responsible for the dizzy spells." The medical opinion, based on incomplete and less than adequate information furnished by Squilante, was that the fainting spell was "the result of pre-existing disease."

Having obtained further medical information, Squilante sought additional medical advice from the company's medical advisor. Again the advisor reported that "abnormality in the brain" would account for the dizzy spells. The medical advisor's evaluation of the medical reports sent to him improperly interpreted a "suggestion" of brain abnormality as a diagnosis of abnormality. In fact, the examining physician had found that the dizzy spells were "transient functional rather than stable or chronic...."

Having thus obtained erroneous medical advice, Squilante sent a memorandum to a New York lawyer, outside counsel, asking his legal opinion on the following question:

John, This is a claim for dismemberment benefit. Loss of left hand, $150,000. Enclosed is our entire claim file. He had dizzy spell while using a power saw at home. Fell into saw and severed hand, one centimeter proximal to distal end of radius taken to hospital and hand re-attached or re-implanted. (This is the non-dominant hand) with satisfactory results. If all goes well, MD says the most he will be able to do is open and close the hand and pick up large objects—could never use it for fine movement.

Please review question of accident directly and independently of all other causes and whether he has sustained loss of hand under the policy provisions. Regards, M.A. Squilante.

This request for a legal opinion was sent on 18 May 1976. On 14 July 1976 counsel reported by telephone to the company that his opinion was "leaning towards this being payable." In response to this report the company set up a 50% reserve.

In his written opinion of 15 July 1976 outside counsel noted that there was no case in point in Virginia and that there was a diversity in the precedents in the several states. He also noted that:

Virginia is a rather conservative State as to accidental loss. While there is no case that holds that a dizzy spell which causes the fall will prevent an accidental loss, the cases that are on the books in Virginia are quite conservative.

. . . .

The cause of the fainting spells is important. If the spells themselves are tantamount to a disease or if they are clearly caused by disease, the general rule is to the effect that the injury received in a fall caused by disease is not an accident directly and independently of all other causes. Not every State will follow this line of reasoning. Since Virginia has no case on point all we can do is look at the general rule.

. . . .

It is my belief that Virginia is quite conservative and that we would have a better than even chance of having them follow the general rule. Our chances would be enhanced, however, if we could determine that the fainting spells were caused by disease rather than a momentary indisposition or some temporary weakness. In all events, this case will have high settlement value. Since there is no case in point the fact that the injury was received as a result of a fainting spell should be sufficient to enable the company to properly defend. It will present a case of novel impression in Virginia. As much information as possible should be obtained concerning the nature and origin of the fainting spells.

Despite this suggestion by outside counsel, Squilante made no further effort to

determine whether the recurring dizzy spells were a result of "disease" though the treating physicians had by this time concluded the dizzy spells were not the result of disease.

Having received the advice of counsel, Squilante and his superior met on 6 August 1976 and determined that they should deny the claim and prepare to defend it. Accordingly, on 11 August 1976 Squilante wrote Mr. Yow, called his attention to the fact that any loss under the policy must result "directly and independently of all other causes" and advised him that no benefits were payable under the policy terms.

Approximately a month later Mr. Yow responded by saying that he was "shocked" that his claim was denied. He offered to provide any further information and requested a reconsideration. Squilante did not receive this letter but on 28 January 1977 Mr. Yow wrote again specifically stating that "no evidence of disease was found." He requested a prompt reconsideration and advice. Squilante replied on 17 February 1977 stating he had "no alternative but to reiterate our company's position as set forth in our letter of denial of August 11, 1976."

Despite the fact that Mr. Yow's letter of 28 January 1977 specifically pointed out that no disease had been found, and dispite the fact that outside counsel considered that disease *vel non* was an "enhancing" factor, Mr. Squilante did not re-refer the matter to outside counsel for further evaluation. Nor did he point out to Mr. Yow that the denial was based specifically upon the assumption that the dizzy spell was a result of a pre-existing disease.

No further activity between the parties took place until after an action on the policy was filed on 15 March 1978 in the United States District Court for the Western District of Virginia.[1] Upon the filing of the action defendant offered $90,000.00 in full settlement. This offer was rejected. Since this Court is both trier of law and fact,

further offers at settlement, if any, have not been communicated to the Court. However it is noted that upon the Court advising counsel that summary judgment would enter for plaintiff on the contract, defendant tendered what it claimed to be full payment under the policy to plaintiff.

The above findings of fact are uncontested. The findings are essentially taken from plaintiff's version as set forth in his brief in support of his motion for summary judgment. There is a further finding of fact which is pertinent to the inquiry.

As is evidenced by the Court's ruling on plaintiff's motion for summary judgment on the contract, the Court has concluded that outside counsel was wrong in his view of Virginia law as to policy liability.[2] Indeed, it is the the Court's view that the loss suffered would uniformly be found compensible among the United States and in Great Britain. The cases so finding are based on the holding and the inescapable logic in *Lawrence v. The Accidental Ins. Co., L.R.,* 7 Q.B.Div. 216 (1881) where it was said:

> It were infinite for the law to consider the causes of causes, and their impulsions one of another. Therefore it contenteth itself with the immediate cause.

That this is the Virginia view is supported by *Mutual Life Ins. Co. v. Dodge,* 11 F.2d 486 (4th Cir.1926); *Newsoms v. Commercial Cas. Ins. Co.,* 147 Va. 471, 476, 137 S.E. 456 (1927); *American Nat. Ins. Co. v. Belch,* 100 F.2d 48 (4th Cir. 1938); and *John Hancock Mut. Life Ins. Co. v. Crack,* 216 F.2d 805 (4th Cir.1954). The Court, then finds as a fact that defendant received erroneous legal advice as to the propriety of a defense to the policy claim.

Having found the foregoing facts the Court must determine whether, in addition to the policy claim, plaintiff is entitled under Virginia law to a recovery for a tor-

1. This action was subsequently dismissed without prejudice.

2. Plaintiff's brief on this point was one of the better expositions of a point of law filed with this judge.

tious failure to pay under the terms of an insurance policy. The Court has studied the briefs of counsel and concludes that there is no settled precedent directly on point decided by the Supreme Court of Virginia. Judge Merhige, for this Court but deciding Virginia law, concluded in *Carter v. Hartford Accident & Indemnity Co.*, 423 F.Supp. 827, 830 (E.D.Va.1976) that, "a tort action will lie against an insurance company for a wrongful refusal to make payments due only upon a showing of malice, wantonness or oppression." The closest Virginia authority on point is *Wright v. Everett*, 197 Va. 608, 615, 90 S.E.2d 855, 960 (1956) where the Court stated in *dicta:*

> In addition, we have held that even though the foundation of the action arose out of privity of contract between the parties, if the same alleged facts show a breach of duty constituting a tortious neglect, plaintiff has a right to elect whether he will proceed in tort or assumpsit.

Though the Supreme Court of Virginia and the federal courts use such language of liability no court has ever applied Virginia law to the end that plaintiff recover under such a theory. An annotation on point is contained in 47 A.L.R.3rd 314. That annotation, dated in 1973, as well as the later case service, cites no Virginia case on point. Indeed, the quoted portion of *Wright v. Everett* indicates that if a plaintiff seeks to take advantage of his tort claim he must first waive his right to proceed in contract. Such a state of the law would not be inconsistent with Virginia's traditional approach that one is entitled to no more than what he bargains for.

Though the opinion in *Carter v. Hartford Accident & Indemnity Co., supra,* did not set forth the reasoning supporting Judge Merhige's conclusion that a Virginia tort claim exists for a "wrongful refusal to make payments due" his reasoning to that end was supported in an earlier unpublished opinion in that case. On the strength of Judge Merhige's opinion this Court will assume the existence of such a cause of action.[3]

Having made that assumption, however, the Court finds that the facts simply do not support a conclusion of "malice, wantonness, or oppression."

It must be recognized that the substantial weight of authority is that payment under the contract was due whether or not Mr. Yow suffered his loss as a result of a dizzy spell consequent to a disease. The reason for this is simple. The disease did not cause his hand to drop off. The accident did.

Nevertheless, the facts found simply do not support any element of maliciousness. Indeed, there appears to be no animus whatever. Defendant obviously was mistaken in its refusal to make payment under the policy but a mistake, even a stupid mistake, is not proof of malice.

Wantonness denotes recklessness, unrestrained cruelty or brutality. While Squilante, his medical advisor, and his legal advisor, did not handle this claim well, in no wise can it be concluded that they handled it with wantonness. And although the consequences to Mr. Yow from the loss of his hand coupled with defendant's failure to pay have been lamentable, it cannot be said that defendant has behaved toward Mr. Yow in an oppressive manner. Oppressiveness connotes an intent and purpose to press one down while the conduct of defendant merely indicates a desire to save the company money in what was erroneously considered to be a doubtful case.

The Court must conclude, then, that even if Virginia recognizes the tort pressed by plaintiff, plaintiff has not proved that defendant's refusal to pay was grounded upon malice, wantonness or oppressive conduct. It follows that no tort nor punitive damages are recoverable in this case.

**3.** Having made this assumption, the Court considers it only of academic interest (if that) to discuss and compare the several theories plaintiff advances to support tort recovery. Had plaintiff filed this action in a Virginia court such a discussion by the Court would have been of substantial value, especially on appeal to the Supreme Court of Virginia.

Judgment must enter for defendant on counts one, two, three, and four of the complaint. Judgment shall enter for plaintiff on count five insofar as count five seeks damages under the contract. Plaintiff shall recover his costs. An appropriate order shall issue.

### JUDGMENT

For the reasons set forth in the accompanying memorandum, the Court finds for plaintiff against defendant on his claim *ex contractu* and for defendant against plaintiff on plaintiff's claims *ex delictu*. Defendant having heretofore tendered to plaintiff the sum of $180,000, with interest, in payment of its contractual liability, it is the judgment of the Court that plaintiff recover nothing of defendant except plaintiff's costs in this behalf expended.

And this is the final judgment of the Court.

Let the Clerk send a copy of this order and the accompanying memorandum to counsel of record.