**Jane DOE, Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, et al., Defendants.**

**Civ. A. No. 94–759–A.**

United States District Court, E.D. Virginia, at Alexandria.

March 8, 1995.

Kevin L. Locklin, J. Edward Flournoy, P.C., Manassas, VA, Peter S. Everett, Blankingship & Keith, Fairfax, VA, for plaintiff.

Gary B. Mims, Brault, Palmer, Grove, Zimmerman, White & Mims, Fairfax, VA, for defendants.

**MEMORANDUM OPINION**

ELLIS, District Judge.

Presented here is the question whether a standard uninsured motorist provision of a Virginia automobile insurance policy provides coverage for an incident in which an insured is abducted in a stolen vehicle, transported to an isolated location, and sexually assaulted within the automobile. More specifically, the question is whether the insured's injuries in these circumstances arose out of the "ownership, maintenance, or use" of the uninsured vehicle, as required by the terms of the policy. For the reasons that follow, the Court holds that the injuries did not so arise.

I.

The dispositive facts of this case are simple and undisputed. On November 16, 1992, Plaintiff Jane Doe [1] was working at a jewelry

1. Pursuant to Plaintiff's understandable request, she is referred to throughout as "Jane Doe" to preserve her privacy.

kiosk in Manassas Mall, a shopping center located in Prince William County, Virginia. At approximately 10:00 p.m., a man later identified as Richard Shane Collins approached Doe, drew a handgun, and proceeded to rob her of the day's store receipts. Gun in hand, Collins then demanded that Doe accompany him to the mall parking lot, where he forced her into a car he had stolen earlier that day. After driving Doe to an isolated location, Collins parked the car and sexually assaulted her at gun point within the confines of the vehicle. He then drove her to two more locations, sexually assaulting her at each stop. Fortunately, another vehicle approached at the third location, distracting Collins and thus allowing Doe to flee the car and her attacker.

During the course of the attack, Doe suffered numerous injuries. In addition to the harm accompanying the sexual assault itself, Doe received multiple abrasions over much of her body. She also sustained bruises and scratches to her neck from strangulation. Doe's hand was wounded by a bullet graze when she attempted at one point to wrest the gun from Collins, causing the weapon to discharge. She also received several bumps on her head from being pushed against the interior car window. And, as a result of this dreadful event, Doe has suffered from post-traumatic stress disorder.

Doe filed the instant lawsuit seeking recovery for her injuries under the uninsured motorist provisions of two automobile insurance policies insuring her.[2] The first policy, issued by Defendant State Farm Fire & Casualty Company, provides uninsured motorist coverage to Doe directly as a named insured.

The second policy, issued by Defendant State Farm Mutual Insurance Company, covers Doe's father and his household family members.[3] Because Doe was living with her father at the time of the assault, she also enjoys uninsured motorist coverage under this second policy. Both policies include a standard uninsured motorist provision that provides coverage for:

> bodily injury sustained by the insured ..., caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

There is no dispute that Doe sustained "bodily injury" within the meaning of this provision.[4] Nor does State Farm dispute that Doe's injuries were "caused by accident."[5] Rather, at issue here is whether Doe's injuries arose "out of the ownership, maintenance or use" of the stolen, and hence uninsured, vehicle. State Farm contends that Doe's injuries did not arise out of the "use" of the vehicle as contemplated by the parties to the insurance contract. In its view, there was an insufficient causal relationship between Doe's injuries and the use of the vehicle **as a vehicle** to warrant recovery in this instance. For her part, Doe argues that Collins' use of the vehicle to abduct, assault, confine, and transport her constitutes a "use" within the intended meaning of the insurance contract. On these undisputed facts and opposing contentions, both parties move for summary judgment.

## II.

As the parties correctly agree, Virginia law

2. The vehicle owner's automobile insurance policy did not cover injuries arising out of unauthorized uses of the vehicle. Thus, because Collins had stolen the automobile in which he assaulted Doe, the parties agree that the vehicle was uninsured pursuant to the terms of the two automobile insurance policies insuring Doe.

3. In view of the fact that the language in the two policies is identical, as well as the close relation of the Defendants, Defendants are hereinafter referred to collectively as "State Farm".

4. The policies define "bodily injury" broadly to mean "bodily injury, sickness or disease, including death, sustained by a person who is an in-

sured." Doe's physical ailments plainly fall within this broad definition. Arguably, so do her psychological injuries, though this question is neither presented nor decided here.

5. Although Collins' behavior was certainly intentional, the appropriate inquiry is whether Doe, the injured party, intended for the behavior to occur. Cf. *Newsoms v. Commercial Casualty Ins. Co.*, 147 Va. 471, 137 S.E. 456, 457 (1927) (defining "accident" in insurance policy to be "an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens") (citation omitted).

governs this dispute.[6] While there is no Supreme Court of Virginia decision directly on point, existing analogous decisions are instructive and ultimately dispositive.

Analysis properly begins with *State Farm Mutual Automobile Insurance Company v. Powell*, 227 Va. 492, 318 S.E.2d 393, 397 (1984), as that opinion announces certain basic principles to guide courts in interpreting "ownership, maintenance or use" provisions in automobile insurance policies.[7] The starting point in determining the scope of insurance coverage, according to the *Powell* court, is "consideration ... [of] the intention of the parties." *Id.* In ascertaining that intent, courts construing "ownership, maintenance or use" language should be mindful of the purpose and subject matter of the insurance policy, and within that context, the words should be given their "natural and ordinary meaning." *Id.* Thus, it would be error to construe the provision's individual words out of context, in a vacuum as it were. Instead, the intended meaning of the provision may be discerned only by construing the words in light of the context in which they appear, that is, in an automobile insurance policy providing coverage for injuries arising out of the use of the vehicle. This is precisely what the *Powell* court commands. Specifically, the court concluded that

> [e]ven though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the insured motor vehicle *as a vehicle*.

*Id.* (emphasis added).[8]

This conclusion, namely that there must be a causal connection between the injuries and the use of the vehicle **as a vehicle,** follows logically from a common sense inquiry into the probable intent of the parties. There are certain inherent dangers associated with vehicular travel. Automobiles are heavy and designed to travel at high speeds, rendering collisions particularly hazardous. Because of this risk, automobile owners purchase insurance to cover injuries arising out of the use of insured and uninsured vehicles **as vehicles.** Thus, while injuries resulting from a highway collision unquestionably arise out of a contemplated use of a vehicle as a vehicle, injuries stemming from an unobservant cyclist's collision with a parked automobile clearly do not. In the latter example, the injuries arise not from the use of the vehicle as a vehicle, but rather from the use of the vehicle as a heavy stationary object, no different from a tree, lamp post, or building wall. Similarly, two passengers who come to blows over an argument in the back seat of an automobile can hardly claim that their resulting injuries arose out of the vehicle's use as a vehicle. In such circumstances, the only relation of the injury to the vehicle is that the latter served as the situs or enclosure for the assault, no different from an apartment, an alley, or an elevator. Using a vehicle as a heavy stationary object or as an enclosure, rather than as a means of transportation, does not constitute a contemplated "use" under the terms of the policies.

The incident at bar falls somewhere between these polar examples. The causal nexus between Doe's injuries and the use of the stolen vehicle is plainly not as strong as it would be had she been struck by a moving automobile. On the other hand, there is *some* causal connection, for Collins used the vehicle to abduct Doe and transport her to an isolated location for the specific purpose of

---

6. The insurance contract was written and delivered in Virginia. Virginia law is therefore controlling on coverage issues. *Buchanan v. Doe,* 246 Va. 67, 431 S.E.2d 289, 291 (1993) (citing *Lackey v. Virginia Sur. Co.,* 209 Va. 713, 167 S.E.2d 131, 133 (1969)).

7. Unlike the instant case, *Powell* did not involve an uninsured motorist provision. Rather, the *Powell* court was called upon to interpret an insurance provision providing coverage for bodily injury "arising out of the ownership, maintenance or use" of the *insured* vehicle, that is, the

vehicle insured under the policy in question. 318 S.E.2d at 394. Nonetheless, it matters not whether the language "ownership, maintenance or use" appears in the insured or uninsured provisions of the policy; in either location the language deserves similar construction.

8. The Virginia Supreme Court has reaffirmed these principles from *Powell* in subsequent opinions. *See State Farm Mut. Auto Ins. Co. v. Rice,* 239 Va. 646, 391 S.E.2d 71, 72 (1990); *Erie Ins. Co. v. Jones,* 248 Va. 437, 448 S.E.2d 655, 657 (1994).

assaulting her. Yet, Doe's injuries, while somewhat causally connected to the car, are not connected to the use of the car **as a car.** Rather, the injuries here arise not from the use of the car **as a car,** i.e. as a means of transportation, but from the use of the car as an enclosure or situs for the commission of criminal acts. Nor is it significant that some of Doe's injuries resulted when Collins pushed her head against the interior car window. Physical contact of this sort with the automobile does not amount to a use of the car as a vehicle. It is no different from the situation where two pedestrians begin to argue, and one pushes the other against a parked car, causing injury. There, as here, the injury clearly would not arise out of the "use" of the vehicle under the terms of the insurance policies. Similarly, the fact that Collins used the vehicle as a vehicle to transport Doe to several isolated locations where he committed the assaults is unpersuasive. The use of a vehicle merely as transportation to the scene of a subsequent crime clearly does not satisfy the causation requirement between vehicle use and injury. *Cf. Erie Ins. Co. v. Jones,* 248 Va. 437, 448 S.E.2d 655, 656–59 (1994). And although Collins' transportation of Doe in the vehicle itself constitutes a criminal act, the injuries for which Doe seeks compensation arose not from the abduction, but from the subsequent assault. The distinction becomes clearer if one imagines that instead of assaulting Doe within the confines of the vehicle, Collins had abducted her, driven her to his apartment, and committed the attack inside his home. In that event, there would plainly be no coverage, despite Collins' use of the vehicle to abduct and transport her to the scene of the assault. The simple fact that Collins chose to accomplish his attack inside the vehicle does not create the requisite causal connection between the injuries suffered and the use of the vehicle as a vehicle. Thus, Doe's injuries did not arise out of the use of the uninsured vehicle and are not covered by the terms of the insurance policies.

### III.

Subsequent decisions by the Supreme Court of Virginia support this result. Applying *Powell* 's standards to an essentially iden-

tical uninsured motorist provision, the court in *Erie Insurance Company v. Jones* recently denied insurance coverage for a criminal assault. 248 Va. 437, 448 S.E.2d 655 (1994). There, the driver of an uninsured vehicle slammed on his breaks, causing a collision with a tailgating vehicle. The first driver got out of his uninsured vehicle and approached the rear vehicle with a shotgun. As he tapped the shotgun on the windshield of the second vehicle in a threatening manner, the weapon discharged, striking and killing a passenger. The passenger's estate sought recovery under his policy's uninsured motorist provision. In holding that the accident did not arise out of the use of the perpetrator's uninsured vehicle, the court rejected a "but for" test of causation and endorsed the position that the "injury must be foreseeably identifiable with the normal use of the vehicle." *Erie,* 448 S.E.2d at 658 (quoting *Detroit Auto. Inter–Ins. Ex. v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414, 419 (1980)). The court concluded that injuries do not arise out of the use of a vehicle where, as there and here, the injury "is merely incidental or tangential" to the vehicle's use. *Id.* 448 S.E.2d at 659.

Concededly, the *Erie* decision addressed a question somewhat different from the one presented here. In *Erie,* the court's causation inquiry focused not on whether the vehicle was used as a vehicle (for clearly it was at the time of the collision), but rather on whether the chain of events leading from the collision to the subsequent dispute and assault were sufficiently related to warrant recovery. Nonetheless, the court's rejection of a "but for" causation test, as well as its affirmation of the principles that the injury must result from the "normal use of the vehicle" or from the use of the "vehicle as a vehicle" are instructive and support the result reached here. In the instant case, as in *Erie,* the fact that a criminal assault temporally followed closely on the heels of the use of a vehicle as a vehicle, and perhaps would not have occurred but for that use, presents an insufficient causal nexus between injury and vehicle use to trigger insurance coverage under the policy language in issue.

Nor is *State Farm Mutual Automobile Insurance Company v. Rice*, 239 Va. 646, 391 S.E.2d 71 (1990), cited and heavily relied upon by Doe, to the contrary. In *Rice*, two men travelled in a Jeep to a hunting site. After the passenger exited the vehicle, the driver picked up his hunting rifle, which then accidentally discharged, striking his companion. In holding that the accident arose out of the use of the vehicle, the court noted that "[t]he specific enterprise associated with the use of the Jeep was to transport [the driver and passenger], their rifles, ammunition, and other hunting equipment to the location where they intended to embark upon their hunting expedition." Thus, the fact that the injured party was taking part in a special use of the vehicle (hunting), and that the injury resulted from that use, created a sufficient nexus between the accident and the use of the vehicle to warrant recovery. The *Rice* court distinguished *Powell*, which denied coverage for an accidental gunshot wound to a plaintiff who had simply joined a gathering outside a parked vehicle.[9] There, "the insured truck was merely the situs of a social gathering" and "was not being used 'for any specific enterprise usually associated with use of a passenger, farm utility vehicle.'" *Rice*, 391 S.E.2d at 73 (quoting *Powell*, 318 S.E.2d at 398). In so holding, and perhaps anticipating *Rice*, the *Powell* court specifically distinguished cases from other jurisdictions where a vehicle was being used for hunting purposes when an accidental shooting occurred. *Powell*, 318 S.E.2d at 398 (distinguishing *Reliance Ins. Co. v. Walker*, 33 N.C.App. 15, 234 S.E.2d 206 (1977) *and Transamerica Ins. Group v. United Pacific Ins. Co.*, 92 Wash.2d 21, 593 P.2d 156 (1979)).

As these cases make clear, hunting is an activity normally associated with the use of certain vehicles. As a result, injuries arising out of this use are covered. By contrast, Collins' use of the stolen car as a location for his criminal attack is not "foreseeably identifiable with the *normal* use of the vehicle."[10] *Erie*, 448 S.E.2d at 658 (quoting *Higginbotham*, 290 N.W.2d at 419) (emphasis added). This distinction is simply another way of stating that the former example falls within the contemplated "use" of the vehicle by the parties to the insurance contract, while the latter does not.

Doe protests that under Virginia law, consideration must be given to the nexus between the injured *party* and the vehicle in question. She points out that in *Rice*, the court found that "a sufficient nexus existed between Rice, who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site." *Rice*, 391 S.E.2d at 73. Consistently, Doe notes, the court in *Erie* found persuasive the fact that the deceased, a passenger in the *insured* vehicle,[11] "had no nexus whatever with the *uninsured* vehicle," whose use was in question. 448 S.E.2d at 658 (emphasis added). Given this, Doe contends that because she was a passenger in the vehicle at issue, the requisite causal nexus has been satisfied.

Doe's argument in this regard misinterprets the relevance of whether the claimant was a passenger in the offending vehicle. Certainly, a plaintiff need not always be a passenger in the vehicle to satisfy the causal link between injury and vehicle use. Unquestionably, a pedestrian struck by an uninsured automobile may claim coverage under the insurance provisions here at issue regardless of the fact that he or she was not a passenger in that vehicle. Similarly, the fact that an injured party was a passenger in an

---

**9.** In *Powell*, a gun rack permanently affixed to the vehicle carried a loaded gun, which inexplicably discharged and killed the plaintiff while he was socializing next to the vehicle. 318 S.E.2d at 394.

**10.** That Collins was using the stolen vehicle for the purpose of abducting and assaulting Doe does not liken this case to *Rice*. Hunting is a reasonably foreseeable use of certain vehicles, as is farming, with foreseeably attendant risks. The same is not true for the use of vehicles to facili-

tate sexual assaults, for, as the Minnesota Court of Appeals has noted, "[t]he risk of being a victim of a violent crime is unfortunately a risk associated with living in our society[,] it is not a risk associated with motoring." *Edwards v. State Farm Mutual Auto. Ins. Co.*, 399 N.W.2d 95, 98 (Minn.Ct.App.1986).

**11.** As previously noted, *Erie* too involved a situation where a plaintiff sued under the uninsured motorist provision of his own policy.

automobile at the time of injury does not automatically trigger coverage; there must still be a causal relationship between the injury and the use of the vehicle.[12] *See State Farm Mut. Auto. Ins. Co. v. Bright,* 850 F.Supp. 493, 497 (W.D.Va.1994). As noted, the status of the injured party gains importance in those cases, like *Rice,* where the vehicle has a special and contemplated purpose to which it is being put.

■ In short, the Supreme Court of Virginia has made clear that there must be a causal connection between the injury and the use of the vehicle **as a vehicle.** And if the vehicle has a special and contemplated function, such as farming or hunting, the causal relation must exist between the injury and the special use to which the vehicle is being put. No such causal connection exists here, and hence Doe's claim fails.

### IV.

Decisions from other jurisdictions also support the result reached here. Most notably, a Minnesota court addressed virtually the identical circumstances presented here and reached the same result. *Edwards v. State Farm Mutual Auto. Ins. Co.,* 399 N.W.2d 95 (Minn.Ct.App.1986). In *Edwards,* the driver of an uninsured automobile forced a woman into his car, drove her to a secluded area, and proceeded to assault her sexually and then murder her, all inside the parked vehicle. In denying coverage, the court held that there was an insufficient causal connection between use of the uninsured automobile and the plaintiff's injuries. *Id.* at 98. Noting that the plaintiff's injuries were "the result of

[the perpetrator's] violent actions and not the result of the use of his vehicle," the court concluded that the vehicle served merely as the situs of the attack. *Id.* at 99. This reasoning is sound and reflects principles consistent with those announced by the Supreme Court of Virginia in *Powell.*[13]

*Chapman v. Allstate Insurance Company,* 263 S.C. 565, 211 S.E.2d 876 (1975), cited by Doe, is not contrary. There, the court held that a plaintiff's injuries arose out of the vehicle's use when she fell from a moving automobile in the course of struggling with her attacker. *Chapman* plainly is consistent with the disposition of the instant case, since injuries sustained while falling from a moving vehicle certainly arise out of the use of a vehicle **as a vehicle,** and not simply out of use of the vehicle as an enclosure for a criminal assault. That the fall was the result of a criminal act is irrelevant to the causal connection between vehicle use and injury. The relevant inquiry is whether the vehicle is being used as a vehicle[14] at the time of injury, and if so, whether the injury resulted from that use.

Doe also erroneously relies upon several cases in which passengers' injuries resulting from assaults by taxi drivers or bus drivers were held to arise out of the "use" of the automobile for insurance coverage purposes. *See Huntington Cab Co. v. American Fidelity & Casualty Co.,* 155 F.2d 117 (4th Cir. 1946) (applying West Virginia law); *Roe v. Lawn,* 34 Mass.App.Ct. 726, 615 N.E.2d 944 (1993), *aff'd* 418 Mass. 66, 634 N.E.2d 117 (1994); *Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568 (1990). These cases are inapposite, for in each, the insurance policy in

---

**12.** As noted earlier, a spontaneous fistfight between passengers in the back of an automobile plainly would fail to meet the causation requirement.

**13.** Others decisions outside of Virginia, while factually distinguishable, also lend support for the result reached here. *See, e.g., Nationwide v. Knight,* 34 N.C.App. 96, 237 S.E.2d 341 (1977) (bullet wound to child passenger during high speed chase did not arise out of the use of the vehicle); *Wausau Underwriters v. Howser,* 727 F.Supp. 999 (D.S.C.1990) (injuries resulting from highway shooting did not arise out of use of automobile); *Davis v. Criterion,* 179 Ga.App. 235, 345 S.E.2d 913 (1986) (the murder of a bus

driver who was first forced to deviate from route and drive to a parking lot did not arise out of the use of the bus); *Florida Farm Bur. Ins. Co. v. Shaffer,* 391 So.2d 216, 217 (Fla.Dist.Ct.App. 1980) (in context of highway shooting incident, court stated that "the risks of bodily injury from a criminal assault are not normally contemplated by the parties to an automobile liability insurance policy"), *cert. denied,* 402 So.2d 613 (Fla. 1981).

**14.** In this regard, it is important to recall that in cases where the vehicle has a special and contemplated function such as hunting or farming, the inquiry focuses on whether the injuries arose out of the use of the vehicle for those purposes.

question covered a common carrier. As a result, the heightened duty of a common carrier toward its passengers and the foreseeable contact between driver and passenger substantially influenced the holdings. *See Huntington Cab*, 155 F.2d at 120 (stating that the "ownership, maintenance, or use" requirements are "satisfied if the injury is incidental to or grows out of the relationship of carrier and passenger which in this form of transportation necessitates personal dealings and contact between the driver and the passenger in the use of the cab"); *Roe*, 615 N.E.2d at 946 (court restricted decision to the "context of a case involving a passenger in a school bus"); *Dotts*, 390 S.E.2d at 575 (stating that "[a]s a consequence of this elevated duty [of common carriers], courts generally hold that assaults made by employees on passengers arise out of the use or operation of the vehicle").

Finally, Doe mistakenly relies on several highway shooting cases from other jurisdictions where courts found a sufficient causal connection between the use of the vehicle and the injuries sustained. *See Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007 (Colo.1992) (injuries arose out of use of vehicle where gang members riding in three vehicles boxed plaintiff's vehicle in on highway and shot plaintiff); *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn.1987) (highway gunman's use of vehicle to pursue plaintiff and maneuver him into position of harm rendered vehicle an "active accessory" to shooting and satisfied causal connection between injury and vehicle use); *State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415 (9th Cir.1991) (applying California and Tennessee law in concluding that highway shooting was not merely incidental to use of vehi-

cle and that injuries arose out of its use); *Willard v. Kelley*, 803 P.2d 1124 (Okla.1990) (factual issue whether use of car caused plaintiff's injuries where purpose of gun's use in shooting pursuing officer was to facilitate vehicular escape). Whether Virginia courts would reach similar results in these contexts is doubtful, but in any event, the Court neither faces nor decides that issue here.[15] Nonetheless, even assuming these decisions were authoritative in Virginia, they are inapposite here. The vehicles in these highway shooting cases did not simply provide the situs for assaults but, as moving weapons, played a far more vital and central role in causing the injuries.[16] Indeed, at least one jurisdiction has treated the two types of cases differently. While Minnesota has allowed insurance recovery for a highway shooting case, *see Klug*, 415 N.W.2d at 876, as noted previously, it also has denied coverage in a case very similar to the instant one. *Edwards*, 399 N.W.2d at 95. Thus, decisions from other jurisdictions either directly support, or at a minimum, do not contradict the result reached here.

## V.

■ In sum, in interpreting the "ownership, maintenance or use" provisions of automobile insurance contracts, the relevant inquiry is whether the vehicle is being used as **a vehicle** at the time of injury, and if so, whether the injury resulted from that use. In this case, Doe's injuries arose not from the abduction, where the vehicle was used as a means of transportation, but from the assault, where the vehicle was used simply as a situs, or enclosure. Thus, Doe has failed to demonstrate a sufficient causal connection between Collins' use of the stolen vehicle as

---

15. It is worth noting in this regard that several other jurisdictions have denied automobile insurance coverage for incidents of highway shootings. *See* cases cited *supra* note 13.

16. Similarly, *Bourne v. Farmers Insurance Exchange*, 203 Mich.App. 341, 512 N.W.2d 80 (1994), *cert. granted*, No. 98820, 527 N.W.2d 522, 1994 Mich. LEXIS 3009 (Mich. Dec. 29, 1994) is inapposite here. In that case, a Michigan appeals court held that injuries resulting from a carjacking arose out of the "use" of the carjacked vehicle. There, the court specifically noted that there was a "direct causal relationship

between the use of a motor vehicle as a motor vehicle and injuries sustained during a so-called carjacking. The physical assault only occurs because the assailants wish to take possession of the vehicle." *Id.* 512 N.W.2d at 82. By contrast, Collins' physical attack on Doe was an act wholly independent of his desire for or use of the vehicle. The Court notes this distinction without reaching the issue of whether in Virginia, a carjacking would be a contemplated "use" of the vehicle within the intended meaning of the policies.

**a vehicle** and her injuries from the violent assault to warrant recovery under the insurance policies.

Accordingly, State Farm's motion for summary judgment will be granted, and Doe's motion for summary judgment will be denied. An appropriate order will issue.