MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME
Docket:       Wal-19-401
Argued:       May 11, 2020
Decided:      June 11, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

DAWN H. HASKELL et al.

v.

STATE FARM FIRE AND CASUALTY COMPANY

MEAD, J.

[¶1]  Dawn H. Haskell and Martin W. Witham appeal from a summary judgment entered by the Superior Court (Waldo County, *R. Murray, J.*) in favor of State Farm Fire and Casualty Company on Haskell and Witham's complaint to reach and apply the State Farm vehicle insurance coverage of a man found jointly and severally liable to Haskell and Witham for damages.  Haskell and Witham argue that they were entitled to a summary judgment because the underlying tort judgment established that State Farm's insured had caused their injuries and that the State Farm automobile insurance policy covers the damages awarded to them for those injuries.  We affirm the court's judgment.

## I. BACKGROUND

[¶2]  The material facts are drawn from the parties' statements of material facts, which were properly supported by citations to the record, *see* M.R. Civ. P. 56(h)(4), viewed in the light most favorable to Haskell and Witham. *See InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶ 12, --- A.3d ---.  On March 27, 2013, Grover Bragg owned a truck insured by State Farm.  Bragg used that truck in the early morning hours to transport an intoxicated and delusional friend away from Bragg's home.  Bragg's friend jumped out of the truck while the truck was moving.  Bragg pulled over but did not exit his truck.  Bragg's friend then broke into Haskell and Witham's house and thoroughly damaged windows and other property.  At one point, he got into the bed of Bragg's truck, but he left again and reentered Haskell and Witham's house.  When Witham attempted to restrain him, he assaulted Witham, resulting in injury.

[¶3]  The insurance policy on Bragg's vehicle insured Bragg "for . . . the ownership, maintenance, or use of" his vehicle.  The policy provided as follows regarding coverage for liability to others:

> We will pay damages an insured becomes legally liable to pay because of:
>
> a.  bodily injury to others; and

> b.      damage to property
>
> caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy.

(Emphasis omitted.)

[¶4]   In April 2014, Bragg was served with Haskell and Witham's complaint alleging Bragg's negligence, among other claims that they brought against Bragg's friend and others.  Bragg did not file a timely answer, and a default was entered against him in June 2014.  By March 2015, State Farm had received the complaint, and in 2016, it employed counsel to represent Bragg, admitting that it had the duty to defend.  Bragg, through counsel, filed an answer but did not move to set aside the entry of default.

[¶5]   At a hearing on damages, Bragg raised arguments and offered evidence about the extent of damages attributable to him.  The court concluded that Bragg and his friend were jointly and severally liable to Haskell and Witham and awarded damages in the amount of $428,071.64.   Bragg's negligence was based on findings that, worried about the safety of people in his home and possible property damage, Bragg took his intoxicated and delusional friend for a drive, rather than calling the authorities, and followed his friend's directions in going down the road where Haskell and Witham live.  Based on

4

the default, the court accepted as true the allegations that Bragg was aware of and assisted his friend in becoming intoxicated before driving his friend away from his home. We affirmed that judgment on appeal. *See Haskell v. Bragg*, 2017 ME 154, 167 A.3d 1246.

[¶6] Haskell and Witham then commenced the present action seeking to reach and apply Bragg's vehicle insurance policy, *see* 24-A M.R.S. § 2904 (2020), and to obtain a declaratory judgment that the coverage applies. State Farm moved for summary judgment, and Haskell and Witham filed a cross-motion for summary judgment.

[¶7] The court entered a summary judgment in favor of State Farm and denied Haskell and Witham's motion for summary judgment. The court reasoned that, although State Farm was bound by the judgment finding Bragg liable to Haskell and Witham, State Farm could argue that the conduct for which Bragg was held liable was not covered by the State Farm policy. The court concluded that the damages payable to Haskell and Witham were not damages that Bragg became liable to pay because of "an accident that involve[d]" a vehicle covered by the State Farm policy and that the damages did not arise out of Bragg's use of the vehicle.

[¶8]  Haskell and Witham timely appealed.  *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶9]  We review a court's entry of summary judgment de novo as a question of law.  *Kelley v. N. E. Ins. Co.*, 2017 ME 166, ¶ 4, 168 A.3d 779.  Two issues have been raised on appeal: (A) whether the judgment entered in the underlying litigation determined all issues of causation pertinent to the coverage decision, and (B) whether the incident for which Bragg was held liable falls within the coverage of the State Farm policy.

A.     Causation

[¶10]  "Upon the entry of a default for failure to timely appear or respond in an action, the facts alleged in the complaint are deemed to have been proved and affirmative defenses are deemed to have been waived."  *Haskell*, 2017 ME 154, ¶ 4, 167 A.3d 1246 (citing M.R. Civ. P. 8(b)-(d)).  Thus, the complaint's allegations that Bragg's negligent actions caused damages to Haskell and Witham are deemed to have been proved.  *Id.* ¶ 17.

[¶11]  We need not decide whether those allegations should be deemed proved against the insurer in this reach-and-apply action, however, because the parties do not dispute the material facts set forth in the summary judgment

record, and those facts are consistent with the complaint's allegations. The question for us to decide is whether the finding of negligence based on the alleged facts requires the insurance company to apply the policy's coverage for bodily injury and property damages "*caused by* an accident that involves a vehicle" insured by the policy. (Emphasis added.)

[¶12] We "have repeatedly stated that an insurer's duty to indemnify is independent from its duty to defend and that its duty to defend is broader than its duty to indemnify." *Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶ 11, 711 A.2d 1310. State Farm did not, by conceding that the allegations of the complaint may fall within Bragg's policy and honoring the duty to defend, waive its claims regarding coverage. *See id.* Counsel appeared under a reservation of rights, and the coverage issue remained unresolved through the underlying litigation.

[¶13] Thus, whether or not Haskell and Witham proved causation for purposes of the negligence action, the terms of the *policy* will determine whether coverage is owed. *Id.* (holding that, even when an insurer fails to defend its insured, the policy—not the finding of tort liability—determines whether the insurance company must pay the insured). The court was correct that, although Bragg's liability for injuries may have been established in the

underlying litigation, the injuries were not necessarily "caused by an accident that involves a vehicle" insured by the policy. The question here is whether the facts presented on summary judgment, viewed in the light most favorable to Haskell and Witham, *see InfoBridge, LLC*, 2020 ME 41, ¶ 12, ---A.3d ---, bring the damages within the coverage of Bragg's vehicle insurance policy.

B.     Summary Judgment on Policy Coverage

[¶14]  Haskell and Witham do not contend that there are any genuine issues of material fact. Rather, they argue that the court misinterpreted the language of the policy in concluding that the damages awarded to Haskell and Witham in the underlying lawsuit were not caused by an accident that involved Bragg's vehicle.

[¶15]  "The review of a judgment in a reach and apply action requires us to first identify the basis of liability and damages from the underlying complaint and judgment and then to review the . . . insurance policy to determine if any of the damages awarded in the underlying judgment are based on claims that would be recoverable pursuant to the . . . policy." *Kelley*, 2017 ME 166, ¶ 5, 168 A.3d 779 (quotation marks omitted). "The meaning of language contained in an insurance contract is a question of law that we review de novo." *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 7, 905 A.2d 819. "If the language of an

8

insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder." *Kelley*, 2017 ME 166, ¶ 5, 168 A.3d 779 (quotation marks omitted). We read the policy's language "from the perspective of an average person untrained in either the law or the insurance field in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Id.* (quotation marks omitted).

[¶16] The insurance policy provided coverage to Bragg for his use of the vehicle and covered his liability for bodily injury or property damage to others "caused by an accident that involves a vehicle" covered by the policy. Thus, we consider whether the causal connection between the conduct and the vehicle is sufficient when an insured uses his vehicle to drive an intoxicated and delusional person to a place where that person exits the vehicle and inflicts harm.

[¶17] As we have held in determining whether injuries resulted from the "use" of a vehicle, "[t]he causal relationship between the proper use of the vehicle and the subsequent injury need not be the proximate cause of the injury; coverage will be extended if there is a reasonable causal connection

between the use and the injury." *Me. Mut. Fire Ins. Co. v. Am. Int'l Underwriters Ins. Co.*, 677 A.2d 1073, 1075 (Me. 1996) (quotation marks omitted). We recently opined that a dog bite that occurred in an insured vehicle did not constitute an "auto accident" covered by the pertinent insurance policy. *Kelley*, 2017 ME 166, ¶ 7, 168 A.3d 779. We reasoned that an auto accident is "an unintended and unforeseen injurious occurrence involving an automobile," which may include incidents other than a collision or car crash, but which does not include "bodily injury from a dog bite that occurred in a car that had absolutely no causal connection to the injury and that was not even in operation." *Id.*

[¶18] Here, the policy language is similar to the terms we employed to construe the term "auto accident." *Id.* We interpreted that term to mean "an unintended and unforeseen injurious occurrence *involving* an automobile," *id.* (emphasis added), and Bragg's State Farm policy covers damages caused by "an accident that *involves* a vehicle" insured by the policy (emphasis added). Thus, we find *Kelley* useful in interpreting the policy at issue here as we consider whether the causal link between the vehicle and the injuries is sufficient for coverage to apply.

[¶19]  We are also guided by our interpretations of insurance policy provisions covering damages arising from the "use" of a vehicle.  We held in *Maine Mutual Fire Insurance Co.*, 677 A.2d at 1075, that when a person was injured by a dog who was tethered to a truck and sitting on the flatbed, the "'use' of the vehicle as an object to secure [the] dog was not directly incidental to the operation of the vehicle and, accordingly, there [wa]s an insufficient causal connection between the injury and the use of the vehicle to fall within the terms of the automobile policy."

[¶20]  In contrast, we held that there was a "reasonable causal connection" between the "use" of the vehicle and the injury suffered when the injury arose from the removal of a loaded hunting firearm from the insured vehicle.  *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d 308, 309, 311 (Me. 1987).

[¶21]  Interpreting analogous language in homeowner policy exclusions, we similarly held that an injury suffered when the insured and the injured person were carrying an item away from a vehicle to the insured's shed did not fall within an exclusion in the homeowner's policy for injuries "arising out of the ownership, maintenance, use, loading or unloading of" a vehicle.  *Foremost Ins. Co. v. Levesque*, 2005 ME 34, ¶¶ 4, 11, 16, 868 A.2d 244 (emphasis omitted)

(quotation marks omitted). We concluded that the exclusion was inapplicable because the vehicle was not involved in the injury, which occurred because the insured had negligently placed an object in a walkway or on the floor of the premises. *Id.* ¶¶ 11, 15-16. Conversely, we held that an identically worded homeowner's policy did exclude coverage for a gunshot wound suffered when another person was loading a rifle into the open back of his pick-up truck. *Worcester Ins. Co. v. Dairyland Ins. Co.*, 555 A.2d 1050, 1051-52 (Me. 1989) (citing *Union Mut. Fire Ins. Co.*, 521 A.2d at 311-12).

[¶22] Although we have not considered issues of vehicle insurance coverage for damages arising from assaults or other torts committed by passengers outside of the insured vehicle, courts of other jurisdictions have confronted "the general question of whether personal injuries resulting from physical assaults by insured vehicle passengers or operators 'arose out of' the ownership, maintenance or use of the vehicle." *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 988 (4th Cir. 1985). Those courts "have almost unanimously found no causal relation between the 'use' of the vehicle and such assault-caused injuries." *Id.* Thus, when a person used a truck to transport a person to the scene of a shooting, the United States Court of Appeals for the Fourth Circuit held that the truck use "was merely incidental, remote from the

type of conduct that is reasonably foreseeable with the normal use of such a vehicle; and not the causative factor in producing" the resulting harm. *Id.* at 989. The "assault, an act wholly independent of the use of the truck, caused the death. Thus, the incidental use of [the] truck in the shooting does not meet the causal relation test of coverage." *Id.*

[¶23] Similarly, in *Kangas v. Aetna Casualty & Surety Co.*, 235 N.W.2d 42, 43-44 (Mich. Ct. App. 1975), the court considered whether the policy could cover damages incurred when the insured driver pulled his vehicle over and several occupants exited the vehicle and assaulted a pedestrian. In a civil action, the driver was found to have aided or abetted in an assault or battery. *Id.* at 43. The court concluded that, whether or not an exclusion for intentional acts precluded coverage, the acts that caused the injuries did not "aris[e] out of the ownership, maintenance, or use" of the vehicle. *Id.* at 45-50 (quotation marks omitted). The court concluded that, although in some circumstances the foreseeable acts of others *inside* the vehicle might be covered, the connection between the conduct and the vehicle was not "more than incidental, fortuitous or but for" when the passengers assaulted someone outside the vehicle. *Id.* at 50.

[¶24]  Thus, if the assailant left the insured vehicle to commit the misconduct, or "the vehicle merely provide[d] a situs for the tort," the injuries do not arise out of the vehicle's use.  *State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1422 (9th Cir. 1991); *see Kelley*, 2017 ME 166, ¶ 7, 168 A.3d 779. When the use of a vehicle has been held to have a sufficient causal relationship to the injuries, the violence is generally perpetrated from a moving vehicle.  *See, e.g.*, *Davis*, 937 F.2d at 1417, 1420 (shooting from a moving vehicle); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1008, 1011 (Colo. 1992) (maneuvering of vehicle to facilitate a shooting from the vehicle).

[¶25] Consistent with these previous interpretations of analogous policy terms, we conclude that the conduct that occurred when Bragg's friend exited the vehicle and inflicted property damage and personal injuries did not *involve* the vehicle within the plain meaning of the policy.  *See Kelley*, 2017 ME 166, ¶ 7, 168 A.3d 779.  There is no "reasonable causal connection" between the use of the vehicle and the injuries suffered by Haskell and Witham.  *Me. Mut. Fire Ins. Co.*, 677 A.2d at 1075 (quotation marks omitted).  All of the acts that caused damages occurred while Bragg's passenger was outside of the vehicle. Although Bragg's negligent act may have incidentally involved him using the vehicle to take his friend away from Bragg's home, the injuries and the property

14

damage are not causally connected to the vehicle use in a way that brings them within the insurance coverage. *See Kelley*, 2017 ME 166, ¶ 7, 168 A.3d 779; *see also Doe v. State Farm Fire & Cas. Co.*, 878 F. Supp. 862, 867 (E.D. Va. 1995) ("[T]here must be a causal connection between the injury and the use of the vehicle as a vehicle." (emphasis omitted)).[1]

[¶26]  Because the facts, viewed in the light most favorable to Haskell and Witham, do not bring their damages within the policy's coverage, we affirm the summary judgment entered by the Superior Court.

The entry is:

Judgment affirmed.

Marc N. Frenette, Esq., and Adam R. Lee, Esq. (orally), Trafton, Matzen, Belleau & Frenette, LLP, Auburn, for appellants Martin Witham and Dawn Haskell

Matthew K. Libby, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellee State Farm Fire and Casualty Company

Waldo County Superior Court docket number CV-2018-24
FOR CLERK REFERENCE ONLY

---

[1]  Because, viewing the evidence in the light most favorable to Haskell and Witham, we conclude that their damages were not caused by incidents that "involved" Bragg's truck, we do not address other issues of policy interpretation, such as whether those incidents constitute an "accident."